# Washington County *versus* Berwick.

# Pittsburg *versus* Cassiday.

# Lancaster City *versus* Smith.

# Marietta Borough *versus* Childs *et al.*

# Morgan *versus* Chester County.

1. The Act of May 1st 1866, relating to the payment of bounties to veteran volunteers, is constitutional.

2. The bounty system in this state was pervaded by the feature, that it was the voluntary action of the people through their public authorities in offering the bounties to those who would volunteer for the proffered sum.

3. No one can compel payment of the bounty, unless he volunteered on the faith of an offer by the public authorities authorized by law for the locality from which he enlisted and to which he was credited.

4. A recovery for bounty can be founded only on a contract relation.

5. The Act of May 1st 1866 is not mandatory, but is to be construed *in pari materiâ* with the Act of March 25th 1864 and its supplements.

6. The Act of 1866 applies only to those veterans who were induced to re-enlist on the faith of the offer of local bounties.

7. The word "credit" given to the reduction in the number of drafted men does not apply to a creditor relation between the volunteer and the locality, but expresses the relation between the government for the number to do service and the locality owing the service.

8. If the locality receiving the credit of a veteran had not offered a bounty, which would include him, the Act of 1866 did not create a duty on the locality to pay.

January 16th 1868. Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

[Washington County v. Berwick.]

The above cases were argued and submitted on similar questions, arising out of the Bounty Law of May 1st 1866.

## WASHINGTON COUNTY v. BERWICK.

This case was on a writ of error to the Court of Common Pleas of *Washington county:* No. 145, to October and November Term 1866, Western District.

By a case stated, in an action in which Franklin Berwick was plaintiff and Washington County defendant, it appeared that Franklin Berwick, being a resident of Washington county, enlisted on the 19th day of August 1861, in the military service of the United States, and served till December 31st 1863, when, being still in the service, he re-enlisted as a veteran for three years, under General Orders No. 191, current series, was mustered in, in pursuance of such enlistment, on the 1st of January 1864, and credited to the county of Washington. He remained in the service until honorably discharged on the 7th of August 1865. He received no local bounty from Washington county or elsewhere, either on account of his original enlistment or re-enlistment. Washington county, when his credit was assigned, did not constitute a separate military district, but the several boroughs and townships of the county did form separate military sub-districts. Washington county did not pay or offer to pay a local bounty to volunteers, under the call under which the plaintiff enlisted, but the several boroughs and townships did pay local bounties.

The question submitted to the court was, whether, under the Act of May 1st 1866, the county of Washington was bound to pay a local bounty of $300 to Berwick. The court (Chamberlain, P. J.) held that the act was constitutional, and gave judgment for the plaintiff.

The defendant appealed, and assigned thus entering judgment for error.

*D. S. Wilson*, for plaintiff in error, referred to Act of May 1st 1866, Pamph. L. 114; Speer *v.* Blairsville, 14 Wright 150; Tyson *v.* Halifax Township, 1 P. F. Smith 9; Ahl *v.* Gleim, 2 Id. 432; Weister *v.* Hade, Id. 474; Act of March 25th 1864, Pamph. L. 85.

*J. W. Kirker*, for defendant in error.

## PITTSBURG v. CASSIDAY.

This case was on writ of error to the District Court of *Allegheny county:* No. 90, to October and November Term 1866, Western District.

The case stated, filed in the action in the court below, in which

[Pittsburg *v.* Cassiday.]

George A. Cassiday was plaintiff and The City of Pittsburg defendant, showed that the plaintiff enlisted into the military service of the United States on the 1st day of August 1861, for three years, and served until the 20th of December 1863, when he re-enlisted as a veteran under General Orders No. 191, current series, was mustered in on the 21st day of the same month, and at that time gave his credit to the city of Pittsburg, which was the place of his legal residence. He remained in the service until honorably discharged, July 20th 1865.

The plaintiff received no local bounty from Pittsburg or elsewhere. Pittsburg did not then constitute a separate military district, but the several wards of the city constituted separate military sub-districts. The city did not pay or offer to pay a local bounty to volunteers under the call under which the plaintiff enlisted, but the several wards did.

The question submitted to the court was the liability of the city to the plaintiff for a bounty of $300, under the Act of May 1st 1866.

The District Court held the act to be constitutional, and gave judgment for the plaintiff, which on writ of error by the defendant was assigned for error.

*J. F. Slagle*, for plaintiff in error, cited Acts of March 25th 1864, and May 1st 1866; Speer *v.* Blairsville, *supra;* Sharpless *v.* Philadelphia, 9 Harris 148; Commonwealth *v.* Allegheny Co., 8 Casey 218; Phila. Ass'n. *v.* Wood, 3 Wright 73.

*J. W. Kirker*, for defendant in error, cited 1 Bl. Com. 46; Const. of Penna., art. 1, § 1, Purd. 9; Sharpless *v.* Philadelphia; Speer *v.* Blairsville; Monon. Nav. Co. *v.* Coons; Weister *v.* Hade; Act of May 1st 1866; Commonwealth *v.* Maxwell, 3 Casey 456; Biddle *v.* Starr, 9 Barr 466; Bolton *v.* Johns, 5 Id. 145; Hepburn *v.* Curts, 7 Watts 300; Commonwealth *v.* Hartman, 5 Harris 118.

## LANCASTER CITY *v.* SMITH.

This case was on writ of error to the Court of Common Pleas of *Lancaster county:* to May Term 1867, Middle District.

In the court below it was an amicable action, in which Peter Smith was plaintiff, and The Mayor, &c., of Lancaster were defendants, and case stated, filed December 6th 1866.

The plaintiff was a resident of Lancaster city; on the 21st of June 1861 he was mustered into the military service of the United States, and on the 23d of December 1863 was re-enlisted in the field as a veteran volunteer, to serve for three years. His credit

[Lancaster City v. Smith.]

was assigned to the city of Lancaster. On the 19th of October 1863, in General Order No. 340, a call was made by the President for 300,000 volunteers; a further call for 500,000 volunteers on February 1st 1864, and another call March 14th 1864 for 200,000 volunteers, and the whole quota of Lancaster was filled by volunteers about the 6th of June 1864. The credit of the plaintiff was applied and counted one under the call of March 14th 1864. The defendants paid no bounties until after the passage of the Act of March 25th 1864, but on the 26th of the same month the councils passed an ordinance to pay bounties, and to borrow money for the purpose. The plaintiff has not received any local bounty from the defendants or from any other persons.

The question was the liability of the defendants to pay the plaintiff a bounty of $300.

The court below (Hayes, A. J.) held the Act of May 1st 1866 to be constitutional, and gave judgment for the plaintiff.

The defendants removed the case to the Supreme Court, and assigned the judgment of the court below for error.

*T. E. Franklin, J. E. Hiester* and *George Nauman*, for plaintiffs in error, cited Acts of March 25th 1864, and May 1st 1866, *supra ;* West Branch Boom Co. v. Dodge, 7 Casey 288 ; Gault's Appeal, 9 Id. 98 ; Reiser v. William Tell Association, 3 Wright 145 ; Plank Road Co. v. Davidson, Id. 440 ; Sharpless v. The Mayor of Philada., 9 Harris 165 ; Medford v. Learned, 16 Mass. 216 ; Menges v. Dentler, 9 Casey 498 ; Tyson *et al.* v. School Directors, 1 P. F. Smith 22 ; Mifflin v. Learn, 3 Id. 180 ; McMaster v. Commonwealth, 3 Watts 297 ; Calder v. Bull, 3 Dallas 388 ; Commonwealth v. McCloskey, 2 Rawle 373 ; O'Connor v. Warner, 4 W. & S. 227 ; Norman v. Heist, 5 Id. 173 ; Pittsburg v. Scott, 1 Barr 314 ; Lambertson v. Hogan, 2 Id. 24 ; Brown v. Hummel, 6 Id. 90 ; Hampshire v. Franklin, 16 Mass. 83 ; Varick v. Smith, 5 Paige (Ch.) 159 ; Philadelphia Association v. Wood, 3 Wright 82 ; Opinion of the Judges, 4 New Hamp. 570 ; Ellis v. Marshall, 2 Mass. 276 ; Barnes v. Falmouth, 6 Id. 409 ; Norwich v. Hampshire, 13 Pick. 62 ; The Case of the Mayor of New York, 11 Johnson 80 ; People v. Brooklyn, 4 Comstock 422 ; Schenley and Wife v. Allegheny, 12 Casey 57 ; Bos. & Rox. Mill Corp. v. Newman, 12 Pick. 467 ; Beekman v. Schenectady & Sara. Railroad, 3 Paige 74 ; Gardner v. Newberg, 2 Johnson (Ch.) 162 ; Stuyvesant v. Mayor of New York, 7 Cow. 606 ; Stetson v. Kempton, 13 Mass. 272 ; Menges v. Wertman, 1 Barr 223 ; Lycoming v. Union, 3 Harris 166 ; Dale v. Medcalf, 9 Barr 110 ; Heister v. Casselberry, 23 Leg. Int. Dec. 21st 1866, p. 405 (Bucks Co.) ; McCulloch v. Maryland, 4 Wheat. 316 ; Speer v. Blairsville, 14 Wright 150.

[Lancaster City *v.* Smith.]

*G. M. Kline, D. G. Eshelman* and *A. Shank,* for defendant in error, cited Acts of 1864 and 1866; Speer *v.* Blairsville; Lycoming *v.* Union; Menges *v.* Wertman; Weister *v.* Hade; Sharpless *v.* Philadelphia, *supra;* Booth *v.* Woodbury, 5 Am. L. Reg. 202; Taylor *v.* Thompson, 6 Id. 174; Turnpike *v.* Commonwealth, 2 Watts 433; Hepburn *v.* Kurtz, 7 Id. 300; Underwood *v.* Lilly, 10 S. & R. 97; Tate *v.* Stoolfoos, 16 Id. 35; Barnet *v.* Barnet, 15 Id. 72; Mercer *v.* Watson, 1 Watts 356; Greeves *v.* McAllister, 2 Binn. 592; Clark *v.* Herring, 5 Id. 33; Greenough *v.* Greenough, 1 Jones 495; Const. of Pa., Art. 9, §§ 1, 9, 17; Calder *v.* Bull, 3 Dallas 388; Commonwealth *v.* McCloskey, 2 Rawle 371.

### MARIETTA *v.* CHILDS.

This was an appeal from the decree of the Court of Common Pleas of *Lancaster county:* In equity. To May Term 1867, Middle District.

The proceeding was commenced by bill of Sullivan Childs, administrator of William H. Childs, deceased, and others against Thomas Stence and others, burgess and town council of the borough of Marietta, setting forth that the decedent and the other complainants were re-mustered into the military service of the United States as volunteers, and credited to the borough of Marietta, with other facts to bring them within the requirements of the Act of May 1st 1866, and prayed that the defendants might be compelled to issue bonds on the credit of the borough and procure a sufficient amount of money to pay the complainants the bounties due them, and for further relief.

The defendants answered, stating they had no information and could not state whether the plaintiffs enlisted as set forth in their bill; they admitted that the plaintiffs had received no bounties and that the borough authorities had refused to pay them; they stated that neither they nor their predecessors had offered to pay bounties, and that they have no information as to other matters stated in the bill. They aver that the complainants are not entitled to the equitable relief prayed for, because they have a complete remedy at law.

There was a general replication filed and an examiner appointed, before whom evidence was given in support of the allegations of the bill.

The court below decreed that the respondents proceed to levy and collect a tax of sufficient amount to pay the complainants $300 each, the bounties due them under the law.

The respondents appealed to the Supreme Court and assigned the decree for error.

[Marietta *v.* Childs.]

*D. G. Baker*, for appellants, cited 1 Story's Eq. Jur., § 70 ; Acts of March 25th 1864, May 1st 1866, *supra*, February 13th 1865, Pamph. L. 136 ; Barclay *v.* Weaver, 7 Harris 396.

*R. W. Shenk*, for appellees, cited McGowin *v.* Remington, 2 Jones 63 ; Shollenberger's Appeal, 9 Harris 340 ; 1 Story's Eq. Jur., § 71 ; Kirkpatrick *v.* McDonald, 1 Jones 393 ; Skilton *v.* Webster, Bright. Rep. 203 ; Bank of Ky. *v.* Schuyl. Bank, 1 Pars. Rep. 220 ; Bank *v.* Adams, Id. 540 ; Bright. Eq. Jur., §§ 24, 609, 610, 611 ; Adams *v.* Beach, 7 Leg. Int. 178 ; Finley *v.* Aiken, 3 Pitts. Leg. J. 1 ; Underwood *v.* Lilly, 10 S. & R. 101 ; Acts of March 25th 1864, February 3d 1865, March 1st 1866 ; Speer *v.* Blairsville ; Tate *v.* Stoolfoos ; Lycoming *v.* Union ; Turnpike Co. *v.* Comm'th., *supra*.

## MORGAN *v.* CHESTER COUNTY.

This case was on a writ of error from the Court of Common Pleas of *Chester county:* To January Term 1868. Eastern District.

It was an amicable action and case stated, in which Joseph W. Morgan was the plaintiff and The County of Chester the defendant.

From the case stated, it appeared that Morgan, then in the military service of the United States, on the 5th of November 1863, re-enlisted as a veteran volunteer, by virtue of General Orders No. 191, current series, &c., and was duly credited to Chester county.

On the 9th of February 1864, the commissioners of Chester county resolved to pay $350 (afterwards reduced to $300), to each recruit credited to Chester county, and by virtue of an Act of Assembly of March 11th 1864, borrowed money for that purpose : in pursuance of the resolution and the act they paid bounties to volunteers ; Morgan on the 23d of March 1864 presented to the commissioners, by his agent, a due certificate of his muster in as a veteran, and was informed that payment would not be made to him.

The question submitted to the court was, whether the defendant was liable to the plaintiff, under the Act of May 1st 1866, for $300 bounty.

The court (Butler, P. J.) being of the opinion that the act was unconstitutional, entered judgment for the defendant.

The plaintiff took a writ of error, assigning the entering of judgment for error.

*W. B. Waddell*, for plaintiff in error, cited Acts of March 25th 1864 and May 1st 1866 ; Sharpless *v.* Philadelphia ; Lyco-

[Morgan *v.* Chester County.]

ming *v.* Union; Weister *v.* Hade; Const. of Penna., art. 9; Speer *v.* Blairsville, *supra;* Const. of Penna. art. 11, § 7; Purd. 24.

*J. S. Futhey*, for defendant in error: Acts of March 25th 1864, and May 1st 1866; Tyson *v.* Halifax; Wood *v.* Philada. Assn.; Sharpless *v.* Philada.; Speer *v.* Blairsville; Lycoming *v.* Union; Menges *v.* Wertman; Menges *v.* Dentler; Const. of Penna., art. 11, § 7, *supra.*

The opinion of the court was delivered, January 23d 1868, by
AGNEW, J.—These cases were argued and submitted together for the purpose of testing the constitutionality of the bounty law of May 1st 1866. We think, however, that the question is one of interpretation only, and the act can be harmonized with former laws. The bounty system in this state grew out of the exigencies of the late civil war, and of the voluntary efforts of the people to relieve themselves from the drafts for military service. The men of capital and means were usually not those upon whom the draft fell most heavily; but that more numerous class we are accustomed to call the people. Hence the public local authorities were often called upon to raise money and pay bounties, but without authority of law. This led to the first act, that of April 1st 1863, which ratified the loans of money made and warrants issued by the corporate authorities, and the payments and contracts entered into for the payment of bounties. This was followed by the Act of 14th April 1863, under which the bounty was only $50. But the increasing demands of the service led to larger bounties and new shifts for raising money, which brought into existence the Act of 25th March 1864. The first five sections were devoted to legalizing former proceedings, while the subsequent part was chiefly devoted to devising a system of bounties for the future. The whole system, however, was pervaded by one prominent feature, to wit, the voluntary action of the people, through their public authorities, in offering the bounties to the acceptance of those who would volunteer for the proffered sum. Hence, in giving a proper construction to the Act of 1864 and its supplements, this court held in several cases with entire unanimity, that no one could compel payment of the bounty unless he volunteered upon the faith of an offer by the public authorities, authorized by the law to offer bounties for the locality from which he enlisted and to which he was credited, in short, that a recovery could be founded only upon a contract relation.

In the cases before us it has been argued that the Act of May 1st 1866 is mandatory, requiring payments to be made without a contract relation: and the attempt is therefore to compel the payment of bounties to those termed veterans, who re-enlisted in the field upon the offer of a federal bounty and a release of their unex-

pired terms of service, and not upon the offer and acceptance of a local bounty.

We think this view of the law is incorrect, and that the act is to be construed *in pari materia* with that of 25th March 1864, and its supplements, and that therefore it applies only to those veterans who were induced to re-enlist upon the faith of the offer of local bounties. Any other interpretation would render the act obnoxious to the charge of its being a mere legislative rescript for the payment of money by the people of a given district to one to whom they owe no debt and no duty. The term *credit* given to the reduction in the number to be drafted from a locality, tends to mislead. The argument used it to imply a creditor relation on the part of the volunteer to the locality receiving the credit.

But it is the act of the Federal Government, and expresses the relation between it as the creditor for the number to do military service, and the locality owing the service. It imports no obligation, perfect or imperfect, to the volunteer who enlisted at the instance of, and for the reward offered by the Federal Government; whose credit to the locality was but an act of distribution, in order to equalize the burdens of war as fairly as possible. It is only when the re-enlistment is prompted by the local offer any obligation can arise.

Instead, therefore, of viewing the act as one of mere power and of doubtful propriety, it is our duty to look for an interpretation more consistent with justice and rightful legislation, and this is readily discovered. The Act of 1866 is supplementary to that of 1864. Its preamble recites that many veteran volunteers, through a misunderstanding of the Act of 1864, have not been able to secure local bounties from the proper authorities of the places to which they have given their credit. Then follows the provision for their payment by the proper authorities of *such* counties, cities, wards, boroughs and townships as *received* the credit.

Turning now to the Act of 1864, we find this provision in the 12th section: " In case any veteran soldiers who have re-enlisted and have not been credited to any *special* locality shall hereafter be credited in the present draft to the *locality from which they originally volunteered*, such veterans shall be paid by the local authorities whose duty it is to pay bounties, *such* bounty as under the provisions of *this act* shall be paid to volunteers *from said locality*."

These veterans having re-enlisted in the field were variously credited, some to counties and to cities at large, and some to minor localities from which they had not originally volunteered, the fact being that many had enlisted from localities distant from their homes on account of a preference in regiments or officers, or

induced by offers of a higher bounty.  On their return from service, the applications for bounties in such cases were frequently met with the objection, that the veterans were not credited according to the Act of 1864 to the special locality from which they now claimed a bounty.  The Act of 1866 attempted, therefore, to remedy this difficulty by directing the bounties to be paid by the county, city or other locality which had actually received the credit.  But the purpose of the act was not to enlarge the right to receive a bounty or to create a liability where none existed before.  If, therefore, the locality receiving the credit had not offered a bounty which would fairly include the veteran credited to it, we cannot suppose the legislature meant to create a duty to pay unsupported by any prior relation from which an obligation to pay could be fairly implied.  Construing the Act of 1866 *in pari materia*, with that of 1864, we must suppose the legislature kept in view the voluntary character of the bounty system, which required an offer of a bounty by the particular locality, and an acceptance of it by the volunteer in order to create the public duty to pay.  Speer *v.* School Directors, 14 Wright 150, and Weister *v.* Hade, 2 P. F. Smith 474, give no countenance to the doctrine set up in these cases.  In both of those cases the offer of bounties was the act of the public authorities who were engaged in levying the tax to fulfil the obligations assumed when the attempt was made to arrest them.

In the latter case where the doctrine of an imperfect or, as it is termed, a moral obligation was resorted to in aid of the legal duty imposed, the money was advanced at the instance of public meetings of the people and upon the assurance of the passage of a law to refund it, which was obtained and accepted and acted upon by the public authorities.  The public faith was fully and clearly plighted, and the people were relieved from the draft by the payment of money advanced.  Nothing was needed but the legal authority to enforce the obligation and this the legislature gave.

Morgan's appeal is, therefore, affirmed.  In Stence *v.* Childs the decree is set aside and bill dismissed at plaintiffs' costs.

In all the other cases the judgments are reversed, and judgments now given for the defendants below with costs.