Edward Marquette, Appellant, v. County of Berks.

*Public officers—Assessors—Compensation of.*

By the act of March 9, 1865, P. L. 290, assessors in the county of Berks are entitled to receive as compensation $2.50 per day for each and every day actually engaged in the discharge of their duty.

By a proper construction of the acts of assembly on the subject the duties of such assessors begin when they receive their precepts to assess and end on the return of the assessment within sixty days thereafter. An assessor can claim no compensation for the performance of any other service nor for anything done by him at other times by way of preparing himself for the performance of his duties nor for the employment, in the performance of the latter, of any number of days in excess of that allowed therefor.

*Statutes—Construction of—Acts of 1865 and 1887—Assessors.*

The act of 1865, P. L. 290, must be construed as a part of the system created by the then existing laws, and must be construed in the light of the rule requiring statutes to be so interpreted as to restrict their effect to their scope and object and to avoid any change in existing law beyond what is necessary to serve these, and this construction forbids the assumption that compensation was to be given to assessors for anything for which they were not entitled to compensation under the previous statutes. For the same reasons it follows that the act of May 24, 1887, P. L. 195, specifically amending sec. 89 of the act of 1834, cannot be held to have any possible effect on the act of 1865, nor be treated as affecting the limitation established by previous statutes as to returns of assessments.

*Words and phrases—Days.*

Where the law provides that an assessment must be completed in sixty days and allows a per diem compensation and fixes no number of hours to be given to the work, it means sixty days of twenty-four hours each. There is no authority to allow the assessor extra pay for the excess over so many hours employed by him in the work of making the assessment.

Submitted Nov. 13, 1896. Appeal, No. 129, Nov. T., 1896, by plaintiff, from judgment of C. P. Berks Co., April T., 1896, No. 52, in favor of plaintiff on a case heard before the court without a jury. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Appeal from judgment of alderman.

The facts sufficiently appear in the opinion of the court below, by ENDLICH, J.

This is an action against the county of Berks to recover a sum alleged to be due to the plaintiff for services as assessor. By agreement of counsel, it was tried without a jury under the act of 1874.

### FINDINGS OF FACT.

1. At the spring election of 1893, the plaintiff was elected assessor of the 12th ward of the city of Reading. Shortly thereafter he took an oath and filed it in the office of the commissioners of Berks county.

2. On or about September 4, 1894, he took another oath and started in upon the work of preparing for the making of the triennial assessment by measuring and arranging properties.

3. On December 4, 1894, he received from the said commissioners the precept ordering him to proceed with the making of said assessment and the triennial assessment book, and took and subscribed the statutory oath, which was subsequently returned by him to the commissioners with the assessment, etc.

4. After December 4, 1894, he spent fifty-three days, and altogether one hundred and thirty-one days, in preparing for, completing and entering the assessment of said ward, all of which time was fairly necessary to enable him properly to do the entire work required of him, and at the expiration of said fifty-three days he returned the precept and assessment to the commissioners.

5. The plaintiff kept an account of all the days so employed by him and returned the same, duly verified by oath, to the said commissioners, who refused to pay the plaintiff for more than the number of days spent in the work after December 4, 1894, viz, fifty-three days.

### FINDINGS OF LAW.

*a.* The plaintiff is entitled to pay at the rate of $2.50 per day for fifty-three days.

*b.* The plaintiff is entitled to judgment against the defendant for $132.50 with interest from January 26, 1895.

The act of April 15, 1834, P. L. 511, sec. 2, as modified by

the act of April 22, 1846, sec. 16, P. L. 490, required the county commissioners, within six weeks after general election of the proper year, to issue their precept for the triennial assessment, directing the assessors to make out and return within thirty days thereafter a just and perfect list of taxables and taxable property, etc. The act of May 15, 1841, sec. 6, P. L. 395, changes the period within which the precept is to issue to four weeks after the election, and that within which the assessment is to be returned to sixty days after the issuance of the precept. " On the receipt of the precept aforesaid," said act of 1834 continues, in sec. 4 (as modified by act of February 28, 1835, sec. 6, P. L. 46), the assessors are to proceed to take an account of the taxables and taxable properties within their respective districts, the act of 1841, sec. 2, requiring them, " before entering upon the duties of their offices," to take and subscribe an oath, the form of which is prescribed by the act of July 27, 1842, sec. 9, P. L. 445, and which is to be returned to the commissioners at the time of the return of the assessments. On the same day upon which the act of 1834, already referred to, became a law, there was also approved " An act relating to counties and townships and to county and township officers : " Act of April 15, 1834, P. L. 537. This act, in sec. 89, P. L. 552, provides " that each assessor shall keep an account of the days actually employed by him in the performance of his duties, make return thereof under oath to the commissioners, and receive for each day necessarily so employed " the sum of $1.00. This section is amended by the act of May 24, 1887, P. L. 195, re-enacting the former, with the single change that the pay is increased to $2.00 per day. The two acts of 1834 being laws not only of the same session but of the same days are, in so far as they are in pari materia, to be construed together : People v. Jackson, 30 Cal. 428 ; Chandler v. Lee, 1 Idaho, N. S. 349 ; Smith v. People, 47 N. Y. 330. Hence, so far as the triennial assessment is concerned, the " duties " for the performance of which the assessor was to be paid $1.00 per day under sec. 89 of the second act of April 15, 1834, were the duties referred to in sec. 4 of the first act of that date. And the act of 1841, being part of the same system, these are also the " duties " referred to in sec. 89 of the second act of 1834 ; the same phrase occurring in each is to be given the same interpretation : Gonder v. Estabrook, 33 Pa. 374. Being more-

over a mere amendment of the section in question, the act of 1887 is to be read into that of 1834 as if its provision had always been there: see McKibben v. Lester, 6 Ohio St. 627; People v. Sweetser, 1 Dak. 308; Ludington v. U. S., 15 Ct. of Cl. 453, and has no other force than to change the specific enactment it refers to, in the single particular in which it departs from the same; see Dilley v. Luzerne Co., 8 Pa. C. C. 162. It cannot, therefore, operate to repeal by implication the act of March 9, 1865, P. L. 290 (cited, as not expressly repealed, in Price's Ind. Loc. Leg. p. 88), which provides "that the pay of assessors, in the county of Berks, shall be $2.50 per day for each and every day actually engaged in the discharge of their duties." By virtue of this enactment, sec. 89, act 1834, had no application to Berks county; and of course a mere amendment of that specific section, without any words of repeal capable of reaching existing statutory provisions other than that recited and re-enacted with the alteration referred to, cannot affect a statute itself providing a substitute, in Berks county, for the section amended. But the act of 1865, in its turn, must be construed as part of the system created by the then existing laws, an exception as to Berks county being established in the rate of per diem for the duties to be performed under those laws, in order to make their operation, in the matter of compensation, to accord with what was deemed just and proper in that county; see Thomas v. Hinkle, 126 Pa. 478, 483. That being the manifest purpose of the act of 1865, the rule requiring statutes to be so interpreted as to restrict their effect to their scope and object, and to avoid any change in the existing law beyond what is necessary to serve these. Maxw. Int. Stat. 96, forbids the assumption that compensation was intended to be given to assessors in Berks county for anything for which they were not entitled to compensation under the previous statutes. In other words, the term "duties," used in the act of 1865, refers to the same thing as the same term used in the acts of 1834, 1841 and 1887; and whilst, in Berks county, the rate of pay demandable by assessors is $2.50 per day for every day necessarily employed in the discharge of their duties, the question what those duties are, when they begin and when they end, i. e., the question for what services and for how many days' service

assessors in Berks county are entitled to pay, is to be settled by reference to the provisions of the acts of 1834 and 1841.

It is very clear, that, under these enactments, the office of assessor is not one of continuous employment and compensation. He has specified duties to perform, at specified times, and generally within specified limits as to the number of days allowed for their performance. He can claim no compensation for the performance of any other service nor for anything done by him at other times by way of preparing himself for the performance of those imposed upon him, nor for the employment, in the performance of the latter, of any number of days in excess of that allowed therefor. It may well be that, with the increase of population and the subdivision of property, the same degree of precision in the making of triennial assessments will require, from time to time, an enlargement of that allowance. Manifestly, however, the legislature is the sole judge of whether the time therefor has arrived and how far it shall go. Thus, the period of thirty days under the act of 1834, proving inadequate by 1841, was extended to sixty days by the statute of that year. But the latter limit as yet remains unchanged by the only power competent to change it, and while it so remains, assessors are bound, if they can, to complete the assessments within that number of days, to return within the same their assessments, whether completed or not, and to be restricted, for the work they have done, to a compensation not exceeding the appointed per diem during that period. Certainly, an assessor who has accepted his office with this limitation cannot go beyond it. If, in view of it, he applies himself to preparing for the work in advance of its inception, it must be presumed that he does so in order to enable himself fully to satisfy the demands of the statute, not to lay ground for a claim against the county for which there is no warrant in the law. There may be various particulars in which a conscientious assessor may feel himself in need of such preparation. He may be conscious of an insufficiency in arithmetic, in penmanship, in his knowledge of the real estate market, etc.; and he may very properly devote some of the time intervening between his election and the issuance of the commissioner's precept to the acquisition of such skill and information in these matters as may be indispensable to him, or at least will greatly aid him, in the performance of his

duties when the occasion for their performance shall have arrived. It would scarcely occur to any one to claim compensation for time thus spent. Yet, in principle, there seems to be no difference between such a claim and that here set up, and "principles are tested by taking extreme cases:" Philadelphia v. Scott, 81 Pa. 80, 88. It follows, that, under no circumstances, can an assessor demand pay for more than sixty days employed in making his return to the precept for a triennial assessment. But if, for any reason, he is able to complete the assessment and make the return in less than sixty days, he is bound to do so, and his compensation in such case will necessarily be measured, not by the maximum period allowed but by the number of days employed by him upon the work after the receipt of the precept. As regards this work, his "duties," in the sense in which the term is used in the statutes of 1834, 1841, 1865 and 1887, begin at that point of time. Before, he has no warrant to proceed with, and is not and cannot be engaged in, the making of the assessment, and no amount of gratuitous oath-taking can alter that fact. The law, however, gives him compensation only for the days spent in the performance of his official duties, not for time employed by him in preparing himself for their performance, before they began. If in this result of the law as it stands there is any hardship, relief must be looked for from the legislature, not from the courts.

It seems hardly needful to add that there is no authority in the county commissioners to allow the plaintiff extra pay for the excess over so and so many hours employed by him in the work of making the assessment on any or each of the fifty-three days during which the precept was in his hands, an expedient suggested at the argument. The law says that the assessment shall be returned within sixty days from the receipt of the precept; i. e. sixty days of twenty-four hours each: Kane v. Com., 89 Pa. 522; Opin. of Justices, 45 N. H. 607; Benson v. Adams, 69 Ind. 354; Hyde v. White, 24 Tex. 137; Pulling v. People, 8 Barb. (N. Y.) 385; Haines v. State, 7 Tex. App. 33. It fixes no number of hours per day to be given to the work. If the eight hour law, act of April 14, 1868, P. L. 99, has any application, directly or by analogy, to the case of assessors, it can only be by way of furnishing a measure for the minimum number of hours to be so employed each day, where that is sufficient to

complete the work within the period limited.   Where it is insufficient for that purpose, it is the duty of the assessor to put upon the accomplishment of his task as many of the twenty-four hours of each day as shall be consistent with a due allowance for rest, etc., and for each of these days not exceeding sixty, he is entitled to $2.50.   The law thus imposes a limit, not only upon the number of days to be consumed, but also upon the compensation to be allowed.   If the former shall, in any instance, be found to be absolutely inadequate to the completion of the work by the assessor, apart from the mere question of his personal qualifications, there will not, perhaps, be any difficulty in finding within the provisions of our law a satisfactory remedy. But it is safe to say that it will not be in the line of this suggestion.   Neither the assessors nor the commissioners can split up the days fixed by the legislature, so as to double or treble, or in any degree increase the compensation given by it to the officers for any one day, or for the entire number of days.   That would be a mere evasion of the statute.

And now, to wit: January 6, 1896, it is ordered that the foregoing decision be filed in the office of the prothonotary, and that he forthwith give notice thereof to the parties or their attorneys, in conformity with the act of April 22, 1874, P. L. 109, sec. 1.

To which findings of law plaintiff filed the following exceptions, which were dismissed by the court below.

### EXCEPTIONS.

1. The court erred in the following findings of law, to wit: " The plaintiff is entitled to pay at the rate of $2.50 per day for fifty-three days;" and in not finding that the plaintiff is entitled to $2.00 per day for one hundred and thirty-one days.

2. The court erred in the following conclusion of law, to wit: " The plaintiff is entitled to judgment against the defendant for $132.50 with interest from January 26, 1895;" and in not finding that the plaintiff is entitled to $262.

### OPINION DISMISSING EXCEPTIONS.

The argument of these exceptions has thrown no new light upon the questions raised in this case, and passed upon in the decision filed January 6, 1896.   They do not, therefore, require

any detailed discussion.   I fully realize the wisdom and importance of the rule laid down by the Supreme Court in Com. v. Macferron, 152 Pa. 244; Quinn v. Cumberland Co., 162 Pa. 55; Com. v. Weir, 165 Pa. 284; Com. v. Wunch, 167 Pa. 186. The question whether an earlier statute is impliedly repealed by a later one is essentially one of legislative intent: Fraim v. Lancaster Co., 171 Pa. 436, and since the constitution aims at uniformity in the body of laws regulating the affairs of counties, art. III. sec. 7, and the lawmakers must be presumed to legislate in furtherance of, and not in opposition to the policy declared by the constitution, an intent to repeal whatever stands in the way of uniformity must be assumed to exist where the language of a statute is broad enough to afford room for such an assumption and to give the enactment such operation without doing violence to its terms.   But it would seem to be pushing that principle beyond its legitimate application to hold that the act of May 24, 1887, P. L. 195, specifically amending sec. 89 of the act of 1834, could have any possible effect upon the act of March 9, 1865, P. L. 290, in the absence of a declaration repealing acts inconsistent with the rate of compensation allowed by the amendment.   Nor can this enactment be treated as affecting the limitation established by previous statutes upon the number of days within which the triennial assessment must be returned.   It is just because all these provisions are in pari materia and must, as such, be construed together, that the direction in the act of 1887, that assessors shall be paid " for each day necessarily so employed," must be understood as intended to be subject to the restriction referred to, i. e., that the days to be counted shall be days falling within the period of sixty days allowed for the return (I do not say the completion) of the assessment.

The third section of the act of February 14, 1889, P. L. 7; on the other hand, defining the duties of assessors thereafter to be elected, has no bearing upon any of the previous provisions as to their compensation.   The latter being a per diem, if new duties are imposed in the performance of which additional time is to be consumed, the compensation, by the terms of those earlier provisions, is correspondingly increased.

A re-examination of the case, in the light of the exceptions

filed, has failed to indicate to me any particular in which the conclusions heretofore announced can be modified.

And now, to wit: June 20, 1896, the exceptions are dismissed, and it is ordered that judgment be entered in favor of plaintiff and against defendant for $143.65. Plaintiff appealed.

*Errors assigned* were, (1, 2) dismissing defendant's exceptions; (3) entering judgment for $143.65.

*Ermentrout & Ruhl,* for appellant.

*W. Oscar Miller,* county solicitor, for appellee.

OPINION BY WILLARD, J., December 7, 1896:

Whether the appellant was necessarily employed one hundred and thirty-one (131) days or twice that number in making the assessment for the 12th ward of the city of Reading, as we view the law, is immaterial. Certain it is, that an assessor cannot assess until furnished with a sufficient precept by the commissioners of the proper county for that purpose. For services performed during the life of his warrant he is entitled to pay. To allow him compensation for one day's services prior to his receipt of the precept implies the right to give him compensation for every working day in the year.

The legislature has prescribed that he shall return his assessment within sixty days after the issuance of the precept. If that is not sufficient time, it is for the legislature to provide the remedy.

By the act of March 9, 1865, P. L. 290, assessors in the county of Berks are to receive as compensation $2.50 per day for each and every day actually engaged in the discharge of their duties. By a proper construction of that act in connection with the acts of April 15, 1834, and April 22, 1846, the duties of the assessors begin when they receive their precepts to assess, and end on the return of the assessment within sixty days thereafter. Nor is this changed or modified by the act of 1887, P. L. 195. Section 89 of that act is, viz: "It shall be the duty of each assessor and assistant assessor to keep an account of the several days by him actually employed in the performance of his duties and to make returns of the same to the

commissioners of the county, verified by his oath or affirmation, and for each day necessarily so employed he shall receive the sum of $2.00."

Under the terms of this section he is to keep an accurate account of his time and is to be paid for each day employed in the performance of his duties. But as his duties begin with the receipt of the precept and end within sixty days thereafter, it is idle to argue that this appellant is entitled to be paid for one hundred and thirty-one days.

The learned judge before whom this case was tried found as matter of fact that the appellant served just fifty-three days from the receipt of the precept to the return of the assessment, and he found the further fact that in preparing for, completing and entering the assessment he was employed seventy-eight additional days, which time was necessary to enable him to do his work.

In an able opinion, however, the learned judge decided that the appellant was only entitled to be paid for fifty-three days. Upon that opinion, which is clear, exhaustive and convincing, the judgment is affirmed.