# Voltz *v.* The County of Erie, Appellant.

*Public officers—Assessors—Compensation—Act of April 4, 1919, P. L. 38.*

The duties of assessors begin when they receive their precepts to assess and end on the return of the assessment. The assessors cannot assess until furnished with a sufficient precept by the Commissioners of the County for that purpose, and are entitled to be paid for services performed during the life of warrants. They cannot receive compensation for services prior to the receipt of the precepts, nor can they be paid for work done after the expiration of their term.

An assessor must complete his assessment on both real and personal property and make return thereof within the time limited by law.

In an action by an assessor against the county for services rendered, it was error to enter judgment in favor of the plaintiff non obstante veredicto, where it appeared that the claim was for compensation for time actually employed by the assessor in the performance of his duties, after the expiration of the term to which he had been elected, and before the issuance of a precept on the second term which the assessor was then serving.

Argued April 9, 1923. Appeal, No. 67, April T., 1923, by defendant, from judgment of C. P. Erie Co., Feb. T., 1921, No. 449, in favor of plaintiff non obstante veredicto, in the case of E. J. Voltz v. County of Erie. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Assumpsit to recover compensation for services rendered as an assessor. Before ROSSITER, P. J.

The facts are stated in the opinion of the Superior Court.

The court gave binding instructions in favor of defendant. Subsequently, on motion, the court entered judgment in favor of the plaintiff non obstante veredicto, for the amount of $765. Defendant appealed.

*Error assigned,* among others, was the decree of the court.

*P. V. Gifford,* for appellant.—Plaintiff had no authority to continue the work of the 1920 assessment beyond the time designated in his precept or beyond the end of his term of office: Marquette v. Berks Co., 3 Pa. Superior Ct. 36; Pierie v. Philadelphia, 139 Pa. 582; Lehigh County v. Semmel, 124 Pa. 366.

*M. Levant Davis,* for appellee.

OPINION BY KELLER, J., July 12, 1923:

The plaintiff, appellee, was the duly elected and legally qualified county assessor for the Third Ward of the City of Erie, for the term ending the first Monday in January, 1920. At the close of the year, 1919, he presented his bill, duly verified under oath, showing that he had devoted three hundred days to the performance of his duties that year. The bill was paid and his receipt taken therefor. He had been reëlected in November, 1919, for a term of four years beginning the first Monday in January, 1920, and received his precept as assessor from the county commissioners on July 7, 1920. Shortly thereafter he presented a bill to the county commissioners for $765 for one hundred and fifty-three days actually employed by him in the performance of his duties as assessor from January 2, 1920, to July 6, 1920, inclusive, at $5 per day (Act of April 4, 1919, P. L. 38). The commissioners refused to pay it and this action resulted. It appeared at the trial that the work for which he claimed to recover was performed by him in connection with his duties for 1919,—making the personal property assessment for 1920,—and represented work which he had been unable to finish by December 31, 1919. The learned president of the common pleas court directed a verdict for the defendant, but subsequently entered judgment n. o. v. in favor of the plaintiff. The county appealed.

The Act of April 23, 1903, P. L. 292, provides that the county commissioners shall issue their precepts to make the triennial assessment of property to the several assessors on or before the second Monday of September; "and the said assessors are hereby required to complete the said assessment, and make their return thereof, not later than the thirty-first day of December, A. D. 1903, and triennially thereafter." Section 2 provides: "The said commissioners shall issue their precepts to the assessors, aforesaid, to make the reassessment of property, between the periods of the triennial assessments, on or before the second Monday of September; and the said assessors are hereby required to complete the said reassessment, and to make their return thereof, not later than the thirty-first day of December of the same year." The Act of April 13, 1911, P. L. 64, amended the second section of the Act of 1903 by requiring the assessors to complete such reassessments and make their return thereof not later than ninety days from the date of the issuing of said precepts. The title of the Act of 1903 shows that it was the intention of the legislature to designate a uniform date limiting the issuing and return of precepts, and to repeal all special acts in conflict therewith. In 1913, a supplement to the Act of 1903 was enacted, (Act of May 20, 1913, P. L. 241), authorizing county commissioners, in their discretion, to issue their precepts to the several assessors on or before the first day of March of each year, for the assessment of such persons as may have removed into the district since the last assessment, or for the reassessment of such property as may have been transferred since the last assessment, and for the assessment of those who may have been omitted from the last assessment; and imposing on the assessors, in such event, the duty to make such assessment and return the same before the twenty-fifth of May. This supplement has no relation to this case, because it nowhere appears that the commissioners exercised the discretion thus committed to them and issued such supplementary precept, or that the services

claimed for in this action were performed in connection with it.

Under the acts above mentioned the duty is, therefore, imposed on county assessors of completing their assessments and making return thereof not later than December 31st, as to triennial assessments, and within ninety days after receiving their precepts, as to reassessments. The court below was of the opinion that the limitations thus imposed related only to the assessment of real estate and as the work performed by the plaintiff was in connection with the assessment of money at interest for the personal property tax provided for by sections 1-16 of the Act of June 17, 1913, P. L. 507, that it could be performed after the end of the year fixed for the completion and return of the triennial assessment and reassessment. We find nothing in the statutes that warrants such a conclusion. On the contrary, all the Acts from April 15, 1834, P. L. 509, down, provide for the issuing by the county commissioners to the assessors of their precepts to value and assess both real and personal property. The lower court's conclusion was based very largely on the assumption that since 1903 a number of new duties had been imposed by statute on assessors which were not required of them under the acts providing for the issuing and return of their precepts, and as these statutes were silent as to when the work should commence and when it should end, it might be done before or after the issuing of such precepts. The duties thus referred to were: (1) Returning to the county commissioners the names and addresses of all taxable inhabitants of the district (Act of July 17, 1919, P. L. 1005). (2) The obligations imposed by the Act of June 17, 1913, supra, such as, (a) furnishing a blank prepared by the county commissioners to every taxable person, copartnership, etc., in such district, requiring a return under oath within ten days thereafter of all moneys at interest owing by solvent debtors; and (b) upon refusal of any taxable to make such return, requiring the assessor to make it for him,

after examining the record and list of judgments and mortgages furnished him by the commissioners, and (c) assessing such negligent or recalcitrant taxable with the amount of all liens he finds as well as any other taxable items which he may ascertain from other sources of information; (d) making a valuation of money at interest and comparing it with the statements furnished by the county commissioners and making return of any discrepancies. But a consideration of these duties in the light of former acts of assembly shows that none of them are new, or amount to more than a restatement of obligations resting upon assessors for many years and included in the precepts issued to them by the commissioners. For example, the Act of April 15, 1834, P. L. 509, which required the assessors to make return of their precepts within thirty days, provided, in section 4, that they should "on the receipt of the precepts aforesaid, proceed to take an account in the form directed by the commissioners, of the names and surnames of all the taxable inhabitants within their respective wards, townships and districts, and also an account of the following real and personal property," etc. The Act of May 15, 1841, P. L. 393, which increased the time for the assessors to make their returns to such precepts to sixty days, specifically included as a part of such return the duty of making "a just and perfect list......of the names of all the taxable persons residing within their wards, townships and districts respectively, and of all property [real and personal] taxable by law, together with a just valuation of the same" (section 6). The Act of July 17, 1919, supra, therefore, imposed no duty on assessors (except, possibly, returning the addresses of taxables) which had not rested on them and been embraced within their precepts for at least eighty-five years. Nor did the Act of June 17, 1913, supra, impose any new or additional duties on assessors beyond those required of them for many years. The chief purpose of the Act of 1913 was to separate the subjects of personal property, which

had formerly been taxed for state purposes, into two classes, and provide that, thereafter, one of them, embracing mortgages, moneys owing by solvent debtors on promissory note, bond, judgment, and the other forms of personal property specified in section 1 of the act, should be taxable for county purposes and not for state purposes: Provident L. & T. Co. v. Klemmer, 257 Pa. 91, 100; Phila. Co. for Guaranteeing Mortgages v. Guaranty Realty Co., 78 Pa. Superior Ct. 258, 261. The duty has rested on assessors of making a return to the county commissioners, in response to their precept, of all mortgages, moneys at interest, debts due from solvent debtors, etc., held by individuals in this Commonwealth, since 1841, (see Act of June 11, 1840, P. L. 612); and from 1844, (Act of April 29, 1844, section 32, P. L. 497) until 1913, a tax for state purposes on money at interest, in the way of mortgages, promissory notes, bonds, judgments, etc., was a part of our state taxing system, though in 1889, one-third thereof was directed to be returned to the respective counties (Act of June 1, 1889, P. L. 420) and in 1891, three-fourths, (Act of June 8, 1891, P. L. 229); and the duty of making return of such moneys at interest was expressly imposed on assessors by the Act of April 22, 1846, P. L. 486. So also the securing of statements in writing from taxables showing the amount of money due and owing by solvent debtors on mortgage, judgment, bond, note, etc., was imposed on the assessor by the Act of 1846, supra, and return thereof directed to be made "at the time he is required to make return to the county commissioners of other property assessed by him" (section 6); and the furnishing of blanks to taxables for the purpose of returning their money at interest and the other duties specified in the Act of 1913, supra, were specifically provided for in the Act of June 1, 1889, P. L. 420, and were probably taken into consideration by the legislature when in 1897 (Act of April 20, 1897, P. L. 28) the time for making return of triennial assessments was first extended to the thirty-first day of December.

It therefore appears, that, except as respects the increased time allowed for making returns provided by the Acts of 1897, 1903, 1911 and 1913, supra, the situation with regard to the duties of assessors, the time for making their returns, and the number of days for which they may charge in the performance of the duties embraced in their precepts is not different from what it was in 1896, when we held in Marquette v. County of Berks, 3 Pa. Superior Ct. 36, that the duties of assessors (so far as covered by their precept) begin when they receive their precepts to assess and end on the return of the assessment. We see no reason for changing the conclusion then expressed by Judge WILLARD: "Certain it is, that an assessor cannot assess until furnished with a sufficient precept by the commissioners of the proper county for that purpose. For services performed during the life of his warrant he is entitled to pay. To allow him compensation for one day's services prior to his receipt of the precept implies the right to give him compensation for every working day in the year." See also the exhaustive opinion of Judge ENDLICH, adopted by this court, (pages 37-42 inclusive) which discusses the matter in detail.

It was the duty of the plaintiff to complete his assessment, as respects both real and personal property, and make return thereof, within the time limited by law, and certainly not later than December 31, 1919. His term of office expired on the first Monday of January, 1920, and he could not perform any official duties after his term had expired. Under his new term, he did not receive his precept until July 7, 1920, and he was not authorized to do anything in the way of assessing real or personal property before that date, in the absence of a supplementary precept as provided by the Act of May 20, 1913, supra. It follows that whatever work he may have performed after the thirty-first day of December, 1919, was work which should have been done by him prior to that date and for which he is not en-

titled to additional compensation. The situation is no different than if someone else had been elected in November, 1919, to succeed him. In such case plaintiff could not have performed any duties as assessor after his term of office had ended; and his successor could not have assessed either real or personal property until he had received his precept directing him to do so.

There is nothing in this conclusion which is contrary to the ruling in Schmuck v. Hartman, 222 Pa. 190, cited by the court below. In that case it was held that if a taxpayer neglects to make a return for a particular year, the taxing authorities cannot after the expiration of such year make an assessment against him for that year. The court below quotes the following extract from the opinion of Mr. Justice BROWN: "No act of assembly authorizes an assessment of a state tax on personal property after the expiration of the year in which it ought to have been assessed and the taxable ought to have paid it." But it is clear that Mr. Justice BROWN is referring to the assessment of the tax by the county commissioners (see Acts of April 15, 1834, supra, section 7, page 512; July 27, 1842, P. L. 441, section 7, page 444; April 29, 1844, supra, section 34, page 499; April 22, 1846, supra, section 6, page 487)—not the valuation or appraisement of the property by the assessor. The former is made during the same year in which the tax is payable; the latter is made during the year preceding that in which the tax is to be paid.

The ninth assignment of error is sustained. The judgment is reversed and is now entered on the verdict in favor of the defendant.