## Commonwealth v. Burr et al.

*Criminal law—Sentence — Probation — Parole—Discretion of court—Acts of June 19, 1911.*

1. The Probation Act of June 19, 1911, P. L. 1055, and the Parole Act of June 19, 1911, P. L. 1059, must be construed together with reference to the system of which they form a part, and especially is this so in view of the fact that both were enacted on the same day. The latter act is in substance, although not in form, a supplement to the former.

2. The court's discretion in granting paroles is a judicial discretion, and consists in determining whether or not any given case falls within the scope of that class of cases in which it was intended by the legislature that the courts might grant paroles.

3. The purpose of the Parole Act was to make it possible for the courts to give to first offenders, who, although of good moral character, have at an unguarded moment "gone wrong," another chance, so as to save them to society and prevent them from becoming members of the criminal class, in cases where the public good may not require their punishment.

4. A parole will not be granted where it appears that defendant has previously been convicted of crime and imprisoned, and there is nothing to show that before conviction he was a man of good moral character.

Petitions for parole. Q. S. Washington Co., May Sess., 1923, No. 213.

*Robert E. Burnside, Adolph L. Zeman, R. G. Miller, Meyer Goldfarb* and *A. Kirk Wrenshall,* for applicants.

*Warren S. Burchinal,* First Assistant District Attorney, for Commonwealth.

CUMMINS, J., Jan. 3, 1924.—Defendant and a number of others, upon their pleas of guilty to certain violations of the Armstrong-Snyder Act, were sentenced at the same time. It was claimed by the Commonwealth that they constituted a "liquor ring" engaged in the illegal sale and transportation of intoxicating liquor in and about Washington, Pennsylvania, and that at least

some of them co-operated with others engaged in the same illicit traffic in Pittsburgh and Wheeling. Upon his plea the defendant was, on May 7, 1923, sentenced to pay the costs of prosecution, a fine of $1369, and to undergo imprisonment in the Allegheny County Workhouse for a period of two years and four months. At the time of imposing sentence, the court suggested that, upon payment during the term of the fine and costs imposed, the sentence as to imprisonment would be reduced to one year. The fine and costs having been paid in full, the sentence was accordingly changed.

Petitions for parole have been presented by defendant and by a number of the others so sentenced with him, and public hearings have been had in accordance with the provisions of the recent Act of May 11, 1923, P. L. 204. It is not the court's intention to file adjudications in all such applications, but the instant cases being the first before this court since the passage of this act, we feel that it is but proper to file at this time a formal adjudication, owing to the radical change in procedure effected by this act. Previously, such applications were, under the Act of June 19, 1911, P. L. 1059, informally made to the trial judge, and usually in chambers, but now, since the enactment of the Amendatory Act of May 11, 1923, the trial judge no longer has authority to grant paroles. Paroles can now be granted only by the court, and by it only after a public hearing had, of which notice must first have been given both to the district attorney and to the private prosecutor. The change in procedure is highly commendable, as it will eliminate "star chamber" proceedings for paroles, and will force before the public those who desire to intercede on behalf of violators of the law.

The parole system is either very poorly understood or is the most abused system in the law of criminal procedure. It has a very laudable use, but its abuse is more extensive. Its promiscuous use can only tend to undermine the whole structure of law enforcement. The purpose of the act is not to effect a general jail delivery. The contention that the court, at its discretion, can grant a parole in any case is a fundamental error. The court's discretion is a judicial discretion, and consists in determining whether or not any given case falls within the scope of that class of cases in which it was intended by the legislature that the courts might grant paroles. In what cases, then, did the legislature intend that paroles might be granted? The answer to this question can only be found in the legislation granting to the courts jurisdiction in such matters. This legislation does not, and could not, of course, indicate all of the specific cases in which a parole ought to be granted, but it does in a general way indicate when relief ought to be extended, leaving it for the court to determine whether any specific case falls within the general class so indicated.

Our parole system consists of two general acts of assembly and their amendments. Both of these acts were enacted at the same session of the legislature, the Act of June 19, 1911, P. L. 1055, and the Act of June 19, 1911, P. L. 1059, the former being known as the "Probation Act" and the latter as the "Parole Act." The Probation Act provides for "release on probation of certain convicts, instead of imposing sentences," and the Parole Act extends the court's jurisdiction to release on parole to cases where sentence has already been imposed. The latter act, although not in form, is in substance a supplement to the former act. They at least form part of the same system, and each must, therefore, be construed with reference to this system of which it forms a part (Washington County v. Berwick, 56 Pa. 466 (473); Stewart v. Keemle, 4 S. & R. 72), and more especially is this true in view of the fact that they were enacted on the same day: Marquette v. Berks County, 3 Pa. Superior Ct. 36.

Commonwealth *v.* Burr et al.

The "Probation Act" provides "that whenever any person shall be convicted . . . of any crime, except murder, administering poison, kidnapping, incest, sodomy, buggery, rape, assault and battery with intent to ravish, arson, robbery or burglary, and it does not appear to the said court that the defendant has ever before been imprisoned for crime, . . . and where the said court believes that the character of the defendant and the circumstances of the case are such that he or she is not likely again to engage in an offensive course of conduct, and that the public good does not demand or require that the defendant should suffer the penalty imposed by law, the said court shall have the power to suspend . . . sentence and place the defendant on parole." It will be observed that the crimes enumerated are such as involve legal malice, moral turpitude or wickedness of heart, such as are not likely to be committed by one of good moral character; and, again, they are such as are not usually committed on the spur of the moment, but ordinarily involve deliberation. Then, again, it must "not appear to the said court that the defendant has ever before been imprisoned for crime." He or she must have been a first offender. It is also made incumbent on the court to investigate the character of the defendant from the circumstances of the crime committed, and otherwise, in order to determine whether he or she is again likely to offend. What was the nature and character of the act committed? Was it the product of a bad heart, or a misstep by one of good moral character? What was the nature of the defendant's prior life? Has he or she before been convicted of crime? What is the likelihood of his or her again offending? Was the offence such, or committed under such circumstances, that the public good requires that the defendant suffer the penalty imposed by law? These are pertinent questions touching on the matter involved. Was not, then, the very purpose of the parole system to make it possible for the courts to give to the first-offender, who, although of good moral character, has at an unguarded moment "gone wrong," another chance, so as to save him or her to society and prevent them from becoming one of the criminal class, in cases where the public good does not require that they be punished? Thus, a boy of tender years, of good character and habits, as a mere lark, may commit a crime, for which he could be sentenced to imprisonment, and both for the good of society and the good of the boy, he is paroled. And so, also, a law-abiding man of mature years may, at an unguarded moment, commit a crime, and yet not be a criminal, and to save him from becoming such, it may be best that he be paroled. The only question involved, then, in these and other applications for parole, is whether the case under consideration falls within the general class above indicated. If it does, it is the duty of the court to grant the parole applied for; but if it does not, then the court has no jurisdiction or authority to parole. In every case the burden is on the applicant to show that his or her case comes within the scope of the parole acts.

In the case of Com. *v.* Burr, it is conceded that he has been previously convicted in this court and has served a term of imprisonment. Apart from this, no attempt was made to show the nature of his prior life, whether or not he was previously a man of good moral character, or the likelihood of his not again offending. Clearly, the case has not been brought within the scope of the Parole Act.

*Decree.*

And now, to wit, Jan. 3, 1924, for the reasons set forth in the foregoing adjudication, the applications for parole by John Burr, defendant, et al. are refused.

From Harry D. Hamilton, Washington, Pa.