**Hollinger et ux. v. Cumberland County et al.**

*J. Boyd Landis*, for plaintiffs.

*Addison M. Bowman, Jr.*, and *Myers & Myers*, for defendants.

REESE, P. J., April 1, 1942.—The parties hereto have filed a stipulation, agreeing on the material facts which, in substance, show that pursuant to a precept issued by the county commissioners of this county to the assessor of the Borough of Camp Hill in the fall of 1939, the assessor proceeded to make the triennial assessment of real estate in that borough. In so doing he assessed, at the sum of $18,000, a tract of land known as "Beverly Park" in the name of the "Mary Kebaugh Estate", which owned the tract. This assessment and the tract of land covered thereby included 14 lots, described in the plan of "Beverly Park", which were later assessed as hereinafter set forth in the name of the petitioners herein. When he had completed the triennial assessment the assessor's books were returned to the county commissioners, including the assessment against the "Mary Kebaugh Estate", but including no assessment in the name of the petitioners for their 14 lots. These 14 lots the petitioners acquired by two separate deeds, one dated April 4, 1940, for ten lots, and the other dated June 13, 1940, for four lots.

Prior to July 1, 1940, tax duplicates for the year 1940 were furnished by the county commissioners on the basis of the triennial assessment to the tax collector of the borough for the collection of county, borough, and school taxes levied against property located in the borough. These duplicates included the property assessed in the name of the "Mary Kebaugh Estate," but did not include any property assessed in the name of the petitioners herein. The "Mary Kebaugh Estate" subsequently paid all taxes levied against it.

Later, during the month of August or September 1940, without any precept or authorization from the county commissioners, and after the issuance of the tax duplicates, the assessor of the borough filed with the county commissioners a list containing, inter alia, the 14 lots of petitioners, assessing them separately, with the improvements thereon erected, in the name of petitioners. At the time of filing these supplemental assessments against petitioners the improvements on the 14 lots had not been completed. No deduction was ever made in the amount of land assessed as the property of the "Mary Kebaugh Estate," nor was any credit allowed the estate for any portion of the taxes paid by it on the 14 lots in question.

In some manner, not revealed by the record before us, the supplemental assessments against petitioners found their way into the tax duplicates. Petitioners, however, did not pay the taxes thus levied against their 14 lots for the year 1940, and subsequently, on May 5, 1941, the tax collector of the borough returned to the county commissioners, as unpaid, the county, borough, and school taxes levied against the 14 lots of petitioners. Petitioners later filed their petition, and a rule was granted on the county, borough, and school district to show cause why the taxes for 1940 on the 14 lots should not be stricken off. After answers were filed by respondents the foregoing facts were stipulated, and the matter is now before us for decision.

It is the contention of petitioners that the supplemental assessment of their 14 lots is entirely improper, irregular, and void, and furnishes no proper basis for levying the taxes in question. With this position we are constrained to agree.

Under The General County Assessment Law of May 22, 1933, P. L. 853, real estate is assessed for taxation every three years, except in counties of the first class. Section 401 of the act provides that in counties of the sixth class (which includes Cumberland) the county

commissioners shall issue precepts to make the triennial assessment to the assessors of townships and boroughs on or before the second Monday of September, and that the assessors are required to complete the assessment and make their returns not later than the 31st day of December of the same year. By this method of triennial assessment the valuation placed on taxable property in the triennial year shall remain unchanged during the two succeeding years, except in those instances where the legislature has specifically provided for alteration: Susquehanna Collieries Company's Appeal, 338 Pa. 366, 370. Section 432 of the act provides for inter-triennial assessments in each of the two years succeeding the triennial assessment, in the making of which the assessor can note in his return such alterations in the triennial assessment as may have been occasioned by transfer or division of real estate, or by the destruction of buildings, or by the erection of buildings or other improvements subsequent to the triennial assessment. Under section 431 the precept for an inter-triennial assessment must be issued on or before the second Monday of September and returned not later than 90 days from the date of the issue of the precept. Section 441 of the act provides for an optional reassessment in any year by issuing a precept to the assessor on or before March 1st, which is returnable before May 25th.

From the agreed facts it definitely appears that the supplemental assessment of the 14 lots acquired by petitioners was not in compliance with the precept issued for the triennial assessment, because the supplemental assessment occurred long after the triennial assessment had been returned. Nor was the supplemental assessment in compliance with a precept for an inter-triennial assessment, because it was made as a basis for 1940 taxes, and any assessment made in compliance with a precept for an inter-triennial assessment in the year 1940 would be the basis for 1941 taxes.

Nothing appears in the record to show that the county commissioners issued any precept for an optional reassessment during 1940, which, in any event, would have had to occur between March 1st and May 25th.

It follows that the assessor had no proper precept for making the supplemental assessment against petitioners herein. We can regard his assessment against petitioners only as supplemental to the triennial assessment made in the fall of 1939. Under the law this triennial assessment was required to be completed by December 31st, and after that date the assessor could make no valid assessments under the precept therefor. An assessor does not have a roving commission, or one that permits him on his own authority to make assessments at any time he sees fit to do so. His power to assess is limited to the precept issued to him by the county commissioners, and any assessment that he makes in compliance therewith must be made within the time limited by the legislature. Any assessment made without precept, or beyond the time limited by the legislature, must necessarily be illegal and void, and cannot support a tax levy or the return of taxes as unpaid when they are thus improperly assessed and levied.

No case has been cited to us, nor could we find any, on the precise point here presented, but we feel that the attitude of the Superior Court on the question has been adequately presented in Marquette v. County of Berks, 3 Pa. Superior Ct. 36, and Voltz v. The County of Erie, 81 Pa. Superior Ct. 467. In each of these cases an assessor sought to recover compensation for making assessments before and after the time within which the legislature provided that assessments should be made in compliance with the precept of the county commissioners. In both cases recovery was denied. It was pointed out that the duties of assessors begin when they receive their precepts to assess, and end on the return of the assessment. The return, of course, must be made within the time limited by the legislature. It was also

stated that an assessor must complete his assessment and make return thereof within the time limited by law. If he makes assessments thereafter and they are invalid as a basis for his compensation, certainly they should be held invalid as the basis for any proper tax levy.

And now, April 1, 1942, the county, borough, and school taxes for the year 1940, assessed against the 14 properties of petitioners, as set forth in the petition herein, are hereby stricken from the list of taxes returned to the Treasurer and Commissioners of Cumberland County as unpaid for the year 1940.