# Schmuck *v.* Hartman, Appellant.

*Appeals—Right of appeal—Tax assessment—Certiorari.*

While no right of appeal from a judgment of the court below, in favor of a taxpayer as against a tax assessment, is given by any statute, the Supreme Court by reason of its general jurisdiction to examine and correct errors of the lower courts, will treat an appeal from such a judgment as a certiorari, and will correct any error disclosed on the face of the record.

In the old Act of May 22, 1722, 1 Sm. L. 131, the powers granted to the Supreme Court were such as "the justices of the Court of King's Bench, Common Pleas and Exchequer or any of them possessed." When, therefore, the Act of June 16, 1836, P. L. 784, refers to the "heretofore" powers of the courts, the general common-law powers of the three principal courts of Westminster Hall, so far as they are unimpaired by the state and national constitutions, are to be understood by the reference.

The judicial authority of the Supreme Court extends to the review and correction of all proceedings of all inferior courts, except where such review is expressly excluded by statute, in accordance with the constitution; and it may issue all sorts of process, and use and adopt all sorts of legal forms that are necessary to give effect to this supervisory authority.

*Taxation—Failure to make return—Making false returns—Assessment —Act of June 1, 1889, P. L. 420.*

All taxation is statutory, and, while it is the duty of every citizen to bear his just proportion of the burden of supporting national, state and local government, he cannot be compelled to do so except in the way provided by a statute. Liability to pay taxes arises from no contractual relation between the taxable and the taxing powers, and cannot be enforced by common-law proceedings unless a statute so provides.

No act of assembly authorizes an assessment of a state tax on personal property after the expiration of the year in which it ought to have been assessed and the taxable ought to have paid it. If a taxpayer neglects to make a return for a particular year, the taxing authorities cannot after the expiration of such year make an assessment against the taxpayer for that year.

If a taxpayer makes an insufficient and false return, the only remedy of the taxing authorities is to pursue the way pointed out by secs. 11 and 12 of the Act of June 1, 1889, P. L. 420. They cannot after the expiration of the year make a valid assessment against the taxpayer: Williamson's Est., 153 Pa. 508, followed.

Argued May 18, 1908.  Appeal, No. 169, Jan. T., 1908, by defendant, from judgment of C. P. York Co., April T., 1908, No. 28, for plaintiff on appeal from tax assessment in case of Henry M. Schmuck v. Emanuel Hartman et al., Commissioners of York County, and Board of Revision of Taxes for York County.  Before FELL, BROWN, POTTER, ELKIN and STEWART, JJ.  Affirmed.

Appeal by the county commissioners of York county from tax assessment.

WANNER, J., stated the facts to be as follows:

This is an appeal by Henry M. Schmuck, from the decision of the Board of Revision of Taxes, of York county, Pennsylvania, in affirming the action of the county commissioners of said county, who on December 28, 1907, raised the valuation of his personal property for purposes of state taxation, for a period of thirty-two years immediately preceding, to wit, from 1876 to 1907, inclusive.

This was done under the supposed authority of sections 11 and 12 of the Act of assembly of June 1, 1889, P. L. 420, because the appellant during that period had not returned to the assessor certain sums of money which he then had invested in mortgages in the state of Ohio.

The appellant had fully paid all the state taxes assessed against him each year during the period above mentioned.

The county commissioners, having discovered that these returns were too low, and that the appellant had thereby escaped taxation on a larger sum of money, raised his taxable valuation from the several sums returned by him, to the aggregate amounts of said Ohio mortgages as actually held by him, during the several years in question, as follows:

| Year | Original Return | Raised Valuation |
|------|-----------------|------------------|
| 1876 | No return | $ 30,000 |
| 1887 | No return | 30,000 |
| 1878 | No return | 59,000 |
| 1879 | No return | 70,440 |
| 1880 | No return | 73,040 |
| 1881 | No return | 80,040 |
| 1882 | No return | 86,040 |

| Year | Original Return | Raised Valuation |
|------|-----------------|------------------|
| 1883 | No return | 109,540 |
| 1884 | No return | 133,040 |
| 1885 | $4,080 | 133,160 |
| 1886 | 4,080 | 146,660 |
| 1887 | 4,080 | 172,220 |
| 1888 | 4,700 | 199,300 |
| 1889 | 4,700 | 236,400 |
| 1890 | 5,100 | 233,840 |
| 1891 | 5,000 | 256,040 |
| 1892 | 5,000 | 262,740 |
| 1893 | 5,000 | 293,640 |
| 1894 | 5,000 | 391,900 |
| 1895 | 5,000 | 485,433 |
| 1896 | 5,000 | 537,613 |
| 1897 | 5,000 | 571,763 |
| 1898 | 5,000 | 649,433 |
| 1899 | 6,400 | 781,258 |
| 1900 | 6,800 | 799,125 |
| 1901 | 5,900 | 842,115 |
| 1902 | 5,600 | 828,590 |
| 1903 | 5,000 | 804,590 |
| 1904 | 5,000 | 824,875 |
| 1905 | 5,000 | 812,325 |
| 1906 | 6,000 | 802,200 |
| 1907 | 6,000 | 727,020 |

It is contended on behalf of the appellant, that this action of the commissioners was illegal. That it was unwarranted by the act of assembly of 1889, and that after the payment of his taxes as regularly assessed, and after the expiration of the year for which they were assessed, it was too late to raise the appellant's valuation, or to reassess him.

The court entered judgment in favor of Henry M. Schmuck.

*Error assigned* was in entering judgment for Henry M. Schmuck.

*John R. Geyer*, with him *John E. Fox* and *H. C. Brenneman*, county solicitor, for appellants.—If an assessment is

wrong and unjust because too low and falsely and fraudulently procured, time, in all fairness, should not run against the party who had no knowledge whatever of its unjustness. The mere fact that certain figures were accepted by certain officers of the state; first, the assessor, and second, the county commissioners or board of revision of taxes, should not operate to defeat the right of the state to recover, particularly if the state through its officers was misled by a false and fraudulent return: U. S. v. Kirkpatrick, 22 U. S. 720 ; Haehnlen v. Com., 13 Pa. 617.

If there be any liability for the tax on this personal property the courts must be astute to discover some remedy for its enforcement. It should not be held that so great a wrong done the commonwealth could never be righted because the courts do not recognize any means whereby the ends of justice could be accomplished: Cochran v. Eldridge, 49 Pa. 365; Fisher v. Ry. Co., 185 Pa. 602 ; Zeigler's Petition, 207 Pa. 131.

*J. S. Black*, with him *C. E. Ehrehart* and *V. K. Keesey*, for appellee.—The appeal must be quashed because there is no authority for an appeal to this court by anyone save the " owner of real estate or taxable property:" Albert v. Board of Revision, 139 Pa. 467.

The whole system of taxation is necessarily statutory, and this court cannot assume jurisdiction of an appeal in a tax case without specific statutory authority : Kimber v. Schuylkill County, 20 Pa. 366 ; Clinton School District's App., 56 Pa. 315 ; Com. v. Coleman, 52 Pa. 468; Wetherald v. Shupe, 109 Pa. 389 ; Philadelphia Co.'s Petition, 210 Pa. 490 ; Gangewere's App., 61 Pa. 342 ; Gifford v. County of Erie, 142 Pa. 408 ; Thomas v. Upper Merion Township, 148 Pa. 116 ; Diamond Street, Pittsburg, 196 Pa. 254.

On the part of the county commissioners of York county this is simply an attempt to assess property which has escaped taxation, and this they have no power to do unless specifically authorized by statute : Williamson's Est., 153 Pa. 508; Moneypenny's Est., 181 Pa. 309 ; Slaymaker v. Lancaster County, 2 Lanc. Bar., No. 43, p. 1.

OPINION BY MR. JUSTICE BROWN, June 23, 1908 :

No right of appeal from the action of the court below is

given by any statute, and counsel for appellants frankly admit that one does not lie. But for nearly two hundred years the "general jurisdiction of this court has been declared by statute to extend to the examination and correction of 'all and all manner of error of the justices, magistrates, and courts of the Commonwealth, in the process, proceedings, judgments, and decrees, as well in criminal as in civil proceedings, . . . . and to minister justice to all persons as full and ample to all intents and purposes as the said court has heretofore had power to do under the constitution and laws of the Commonwealth.' Such are part of the words of the act of 1836. In the old act of 22d May, 1722, the powers granted were such as 'the justices of the Court of King's Bench, Common Pleas, and Exchequer, or any of them possessed.' When, therefore, the act of 1836 refers itself to the 'heretofore' powers of the courts, the general common-law powers of the three principal courts of Westminster Hall, so far as they are unimpaired by our constitutions, state and national, are to be understood by the reference:" Chase v. Miller, 41 Pa. 403. "The judicial authority of this court extends to the review and correction of all proceedings of all inferior courts, except where such review is expressly excluded by statute, in accordance with the constitution; and we may issue all sorts of process, and use and adopt all sorts of legal forms that are necessary to give effect to this supervisory authority:" Gosline v. Place, 32 Pa. 520. The motion to quash is overruled, but, treating the appeal as a certiorari, the record is brought up for review, and if it discloses error by the court below in denying to the appellants a legal right under admitted facts, such error must be corrected.

From 1876 to 1884, inclusive, Henry M. Schmuck made no return of his personal property liable to state tax. From 1885 to 1907, inclusive, he did make returns, starting in 1885 with $4,080, and gradually increasing them until the one for 1907 reached $6,000. Late in that year the county commissioners, having learned that for thirty-two years the appellee had either failed to make any return or had falsely returned his personal property liable to a state tax, made assessments or reassessments against him for each year from 1876 to 1907. That made for the year 1876 was for $30,000, and, down to and in-

cluding 1884, they varied from that amount to $133,040. From 1885 the reassessments varied from $133,160, the lowest, to $824,875, the highest.

The appellee has undoubtedly withheld from the commonwealth a large sum which he ought to have paid for taxes, and his moral duty unquestionably now is to pay it, but he cannot be compelled to perform that duty unless there is a right in the commonwealth to enforce it as a legal one. All taxation is statutory, and, while it is the duty of every citizen to bear his just proportion of the burden of supporting national, state and local government, he cannot be compelled to do so except in a way provided by a statute. Liability to pay taxes arises from no contractual relation between the taxable and the taxing power, and cannot be enforced by common-law proceedings unless a statute so provides. They can be collected in no other way than that pointed out by the statute, and cannot be collected until they have first been assessed according to the statute. Are the assessments and reassessments made by the appellants sanctioned by any statute? If they are not, they are void. No act of assembly authorizes an assessment of a state tax on personal property after the expiration of the year in which it ought to have been assessed and the taxable ought to have paid it; and yet this is what the appellants did for the years from 1876 to 1884. They do not pretend that there was authority for this in any statute that had been passed up to 1885, and, as to these original assessments made by them thirty-one years after the first one ought to have been made and twenty-three years after the one for 1884 should have been made, nothing more need be said.

From 1885 to 1907 the appellee regularly made returns to the assessors. For these assessments, upon which he paid taxes each year, the appellants would now substitute reassessments as a basis for the collection by the commonwealth of a large sum of money from the appellee. For this extraordinary proceeding they must point to some statutory authority, for it can exist nowhere else. It is no answer that the appellee defrauded the state and ought now to be compelled to pay, for, whatever may be the moral aspect of the case, it is his right when, at this late day, the appellants would impose taxes upon him, which, if ever due, ought to have been imposed years ago,

to ask for and be shown the statute under which they would now compel him to pay.

By the acts of 1885 and 1889 the commonwealth undertook to protect itself from the failure of a taxable to make a proper return, and, if it did not sufficiently do so, it is not his fault. The returns made by the appellee from 1885 are to be regarded as false, for he did not return during that period all of his personal property liable to state tax. In now undertaking to re-assess him for these twenty-three years, the appellants insist that they have authority to do so under section 1 of the Act of 1889, P. L. 420, which provides that no failure to assess or return personal property shall discharge the owner or holder thereof from liability therefor to the commonwealth. The act of 1889 was not retrospective, but, aside from this, Schmuck made a return in each year from 1885 to 1907. If he had not, his liability to the commonwealth, would, of course, have continued under the first section of the act of 1889; but in each year from 1889 to 1907 that liability was to be fixed by the county commissioners in the way pointed out by section 5 of the act. If the returns made were false, the liability of the appellee was to be ascertained in the way pointed out by sections 11 and 12 of the act. No other mode appears in that act or any other for fixing the liability of a taxable who makes a false return, and no other, therefore, exists. The mode pointed out in the act of 1889 for fixing liability to the commonwealth, either upon a failure to make a return or upon a false return, must be pursued each year, for in each year the tax is to be assessed and paid.

What was attempted by the appellants here was attempted in Williamson's Estate, 153 Pa. 508. In 1888 Williamson failed to make any return of his personal property to the assessors. They estimated his taxable personal estate at $45,000 and assessed him with that amount. The board of revision of taxes added fifty per cent by way of penalty, and the assessment, as corrected and revised by them, was $67,500. The taxes on this were paid. Two or three months after their payment, and in the following year, Williamson died, the inventory of his estate showing personal property amounting to $2,500,000. In April, 1888—six months after he should have made his return in 1887—the board of revision of taxes made

a new assessment, without the intervention of the assessors, fixing the amount of the personal estate at $2,500,000 and adding a penalty of fifty per cent. This court held that the second assessment was improper and void, and that the county of Philadelphia, having received the whole amount of the tax under the first assessment, could recover nothing more from the estate. In the course of his opinion Mr. Justice WILLIAMS said: " If the decedent had made a false return and so misled the board a very different question would be raised. He simply declined to give any information." Upon this these appellants lay great stress, but it is to be regarded as mere obiter dictum. The question of a false return was not in that case. If it had been, this court would have been compelled to hold that the only remedy the state has for a false return is the one which is provided by itself in the 11th and 12th sections of the act of 1889, and no other can be pursued.

Taxation is purely for the legislature. The judiciary can enforce it only as the legislature directs it to be enforced. For cases like the present additional legislation is manifestly needed, but, until it is enacted, the commonwealth must submit. Appeal dismissed at appellants' costs.