## Tucker *v.* Fertig et al., Appellants.

*Lease—Oil lease — Description of lands — Doubtful meaning— Evidence—Extraneous circumstances.*

1. Whether an agreement relating to the operation of a gasoline plant on land covered by an oil lease, and pro-rating the proceeds thereof according to the number of wells on "adjoining farms connected on line," applies to tracts of land separated by a public highway, is doubtful, and dependent on the circumstances under which the words are used.

2. In determining whether the words applied to operations only in connection with leases then existing or others after-acquired on lands separated from the former by a highway, the courts will consider the contract in view of the circumstances existing at the time of the execution, the necessities for which the parties naturally provided, the advantages each probably sought to secure and the relation of the properties in regard to which they negotiated.

3. Under these circumstances, the contract did not apply to land separated by a public highway.

Argued September 29, 1922. Appeal, No. 87, Oct. T., 1922, by defendants, from decree of C. P. Forest Co., Sept. T., 1920, No. 1, on bill in equity, in case of Morris W. Tucker v. Samuel C. Fertig et al., copartners doing business under the firm name of National Oil Co. Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill in equity for injunction and accounting. Before LINDSEY, P. J.

The opinion of the Supreme Court states the facts.

Decree for plaintiff. Defendant appealed.

*Error assigned,* inter alia, was decree, quoting it.

*W. S. Clark,* with him *A. C. Brown* and *J. H. Alexander,* for appellant.

*Edmond C. Breene,* with him *John M. McGill,* for appellee.

OPINION BY MR. JUSTICE FRAZER, January 3, 1923:

In 1895 plaintiff leased land known as the "Tucker Farm" for oil and gas purposes to O. W. Proper, who subsequently assigned his rights to defendants. The lease, however, contained no provision for utilization of casing-head gas obtainable from the premises. To authorize such use, plaintiff, in 1913, entered into an agreement with defendants reciting the desire of the parties to utilize this gas in the manufacture of gasoline and providing that plaintiff should receive from the sum realized the value of "one-eighth of all gasoline sold off the property, after deducting running expenses and wear of gasoline plant, divided pro rata according to the number of wells on adjoining farms connected on line." At the time this agreement was executed defendants were operating oil wells on the Tucker property and also on the Bowman farm, adjoining plaintiff's land, and on the Fleming and Cleland farms lying on the opposite side of the public highway, known as Preacher Road, on both of which latter properties they held leases and operated oil wells in connection with pumping machinery located on plaintiff's land. The oil wells on the Jones farm, adjoining the Bowman farm but not plaintiff's land, were operated by defendants by separate pumping apparatus located on the first named farm.

Following the making of the agreement of 1913, defendants proceeded to install and operate a gasoline manufacturing plant on plaintiff's farm, connecting with it by gas-line wells on both plaintiff's and the Bowman farms. Subsequent to the installation of the gasoline

manufacturing equipment, defendants acquired other properties known as the Ley, Weikal and Critchlow farms, respectively situated on the opposite side of Preacher Road from plaintiff's farm, and proceeded, over objection from plaintiff, to connect the wells on these farms, together with those on the Fleming farm, with the gasoline equipment on plaintiff's property and to operate them in connection with the Tucker wells, prorating the gasoline produced from the wells on the farms named with that obtained from wells on the Tucker farm. Plaintiff, claiming the extended use of the machinery was not authorized by the terms of the supplemental agreement, that the additional wells increased to a large extent the wear and tear of the machinery, as well as the cost of its operation, and also added to the expense of manufacturing gasoline obtained from the casing-head gas of plaintiff's wells, thus materially decreasing his revenue, filed this bill asking, inter alia, that defendants be enjoined from operating the wells on the Ley, Critchlow, Fleming and Weikal farms, through connection with the gasoline works on plaintiff's property. The court below granted the injunction prayed for and defendants appealed.

The single question now before us is the meaning of the expression "adjoining farms connected on line" as used in the agreement. Whether tracts of land separated by a public highway may be considered as "adjoining" each other is doubtful and dependent somewhat on the circumstances under which the word is used. Accordingly, in ascertaining the intention of the parties, we may properly consider the contract in view of the circumstances existing at the time of its execution, the situation of the parties at that time, the necessities for which they naturally provided, the advantages each probably sought to secure and the relation of the properties in regard to which they negotiated: Lacy v. Green, 84 Pa. 514; Republic Trust Co. v. Hughes, 262 Pa. 159, 166. Following the construction of the gasoline works, connection was

made with the wells on the Tucker, Bowman and Jones farms. Defendants at that time were not the owners of other gas property in that vicinity, as the Fleming farm, above referred to, was not gas-producing territory. Evidently the parties had in contemplation merely those farms adjacent to each other, and at the time when actual operations were being conducted nothing was said in reference to the extensions of the line to defendants' future acquirements. A construction placed on the language of the agreement to cover additionally acquired properties would render unlimited the extent to which the line might be carried should defendants subsequently purchase other properties in the neighborhood and, as such purchases would require additional gas lines, the income of plaintiff from wells operated on his farm would be correspondingly decreased. The interpretation contended for by appellants, viz, that the provisions of the agreement covered properties subsequently purchased by defendants, would, necessarily, place upon plaintiff a burden certainly not contemplated by the parties at the time it was entered into. The court below found that when the agreement in question was made "there was a separate power plant for the wells on the Jones farm, but the gas produced on the Jones farm, as well as that produced on the Bowman and Tucker farms, was all run into one gas line, which connected with the power plant on the Tucker farm and was used for pumping the oil wells."

The character of the properties, their location and surroundings, the circumstances under which the agreement of 1913 was made, clearly indicate the intention of the parties to be that the Tucker, Bowman and Jones farms were the "adjoining" properties intended to be covered by the agreement and should be operated as a unit for the purpose of manufacturing gasoline.

The court below properly limited the agreement to wells located on the Tucker, Jones and Bowman farms.

The decree of the court below is affirmed at the costs of appellants.