## The Citizens National Bank v. Nease et al.

*Miller & Schmidt,* for plaintiff.

*C. L. V. Acheson,* for receiver of First Bank & Trust Company, claimant.

GIBSON, J., June 24, 1939.—Certain real estate of defendants having been sold by the sheriff for the total sum of $800, the sheriff filed his schedule of distribution, applying the proceeds of the sale to: (1) Sheriff's costs; (2) city, county, and school tax liens; (3) on account of two liens filed by the Commonwealth of Pennsylvania

at no. 146 and no. 147, February term, 1937, for unpaid liquid fuel taxes. The balances distributed on these liens were $36.21 and $73.22, respectively.

These two liens in favor of the Commonwealth were entered on December 1, 1936. The lien at no. 146, February term, 1937, covered liquid fuel taxes for the months of July to November, inclusive, 1929, in the sum of $6,-872.66. This tax was settled or determined on October 25, 1932. The tax for which the lien was entered in favor of the Commonwealth at no. 147, February term, 1937, covered liquid fuel taxes for quarterly payments due March 1, 1928, and quarterly thereafter until June 30, 1929, totaling $13,004.46, settlement having been made on October 25, 1932.

The tax lien entered at no. 146, February term, 1937, was assessed under the provisions of the Act of May 1, 1929, P. L. 1037, 72 PS §2564.

The taxes for which the lien was entered at no. 147, February term, 1937, were assessed under the Act of April 14, 1927, P. L. 287.

On January 12, 1933, the Citizens National Bank entered judgments against W. G. Nease and J. M. Deal in the sum of $70,000, and on the same day W. D. Gordon, Secretary of Banking, Receiver of First Bank & Trust Company, entered judgments against W. G. Nease in the sum of $22,375, and on the same day the Citizens National Bank entered judgments against Thomas J. Langfitt, William G. Langfitt, and W. G. Nease, in the sum of $500. Each of these judgments was revived within the five-year period and retained its lien at the time of the sale of the real estate mentioned.

Exceptions were filed to the sheriff's schedule of distribution by Citizens National Bank of Washington, Pa., and R. W. Doty, Secretary of Banking of the Commonwealth of Pennsylvania, Receiver of First Bank & Trust Company of Washington, as to that portion of the schedule applying to the payments to the Commonwealth of Pennsylvania on account of its liens at no. 146 and no.

147, February term, 1937, in the sums of $36.21 and $73.22, respectively, and in not awarding the total of the said two items, viz., $109.43, to the Citizens National Bank of Washington and the Secretary of Banking, receiver, proportionately, on the liens held by them which they claim took priority over the liens for unpaid liquid fuel tax filed on behalf of the Commonwealth of Pennsylvania. The question arises regarding the right of the Commonwealth of Pennsylvania to priority in the distribution of the proceeds of the sale of real estate.

The State of Pennsylvania has a sovereign right of priority over all creditors: South Philadelphia State Bank's Insolvency, 295 Pa. 433, 438; Commonwealth v. Lowe Coal Co., 296 Pa. 359, provided the State indicates its desire to exercise its sovereign power. It is evident that it may waive that right or priority if its legislative body so provides.

This brings us to a construction of the legislation provided for the levying and collecting of liquid fuel taxes. As to the construction of that legislation, there are certain general principles which must be borne in mind: (1) All taxation is statutory, and while it is the duty of every citizen to bear his just proportion of the burden of supporting National, State, and local government, he cannot be compelled to do so except in the way provided by statute. Liability to pay taxes arises from no contractual relation between the taxable and the taxing powers, and cannot be enforced by common-law proceedings unless a statute so provides. They can be collected in no other way than that pointed out by the statute, and cannot be collected until they have first been assessed according to the statute. Taxation is purely for the legislature. The judiciary can enforce it only as the legislature directs it to be enforced: Schmuck v. Hartman, 222 Pa. 190. (2) It is well settled that tax laws are to be construed most strictly against government and most favorably to the taxpayer, and a citizen cannot be subjected to a special burden without clear warrant of law: Hus-

band's Estate, 316 Pa. 361; Arbuckle's Estate, 324 Pa. 501.

We think exceptants should be treated in the same manner as a taxpayer, for the reason that if the State is to have priority in the distribution of the proceeds of a debtor's real estate, the lien creditors, who in order of date precede the liens of the State, will be required to bear the burden of the tax, and to that extent the property of the lien creditors is being taken for the payment of that which it was the duty of the taxpayer to pay.

The Act of 1927, supra, under which the lien at no. 147, February term, 1937, was filed, imposed a tax on liquid fuels and provided for the collection of such tax and the creation of liens. Section 12 of the act provided that the taxes collected by the dealer for the Commonwealth "shall be considered a public account, after being settled in the manner herein prescribed, and, as such, shall be a lien upon the franchise or property, both real and personal, of any dealer or consumer, after the same has been entered and indexed of record by the prothonotary of the county where the dealer's or consumer's franchise or property is situate."

The Act of 1929, supra, under the provisions of which the lien at no. 146 February term, 1937, was filed, imposes a tax on liquid fuels, and provides for the collection thereof and the creation of liens. Section 12 of that act provides:

"All taxes collected by a dealer or consumer for the Commonwealth shall be considered a public account after being determined in the manner herein prescribed, and, as such, shall be a lien upon the franchises or property, both real and personal, of any dealer or consumer, after the same has been entered and indexed of record by the prothonotary of the county where the dealer's or consumer's franchises or property are situated."

Section 14 of the same act provides for the collection of the tax by a warrant of distraint and a levy on goods,

chattels and effects of the taxpayer, and the sale thereof, and provides:

"(c) Upon any sale under a distraint, as hereinabove provided, the amount of the public account herein provided for shall, after deducting the expenses of such sale and all prior liens upon the property, be first appropriated out of the proceeds thereof to the payment of the said public account".

The Fiscal Code of April 9, 1929, P. L. 343, sec. 1207, provides that the Department of Revenue shall collect the liquid fuel tax "as provided in the act or acts imposing said tax, and the procedure for making such collections, as well as the lien of said tax, shall be as provided in said act or acts."

Section 1401 of The Fiscal Code, supra, is a general provision for the collection of all State taxes imposed under the authority of any law of this Commonwealth now or hereafter enacted, and provides that all public accounts settled against any person "shall be a first lien upon the franchises and property, both real and personal", of such person, "from the date of settlement . . . and public accounts, due the Commonwealth, shall first be allowed and paid out of the proceeds of such sale, before any judgment, mortgage, or any other claim or lien against such corporation, association, or person".

The Fiscal Code of 1929 was amended by the Act of June 3, 1933, P. L. 1474, and section 1207, above referred to, as amended, provided, as to liquid fuel tax:

"The Department of Revenue shall collect the liquid fuels tax as provided in the act or acts imposing said tax, and the procedure for making such collections shall be as provided in said act or acts. All questions relating to the lien of such tax, including the date from which such tax shall become a lien, and its right to priority of lien and payment over other liens, shall be determined by the provisions of the said act or acts and not by the provisions of article fourteen of this act." (Article XIV of The Fiscal Code of 1929 included section 1401 above referred to.)

Section 1401 of The Fiscal Code of 1929 was again amended by the Act of June 11, 1935, P. L. 303, by adding a provision for the release of the lien of taxes from a part or parts of the real property of any corporation.

The Fiscal Code was again amended by the Act of February 2, 1937, P. L. 3. Among the amendments is section 1207, to include, in addition to liquid fuels, certain other taxes, such as malt beverages, etc., "as provided in the acts imposing said taxes, and the interest and penalties, as well as the procedure for the appeal and collections of and with respect to such taxes, shall be as provided in said acts in so far as they are inconsistent with the provisions of this act. All questions relating to the lien of such taxes, including the dates upon which such taxes shall become liens, and their right to priority of lien and payment over other liens, shall be determined by the provisions of the said acts, where such provisions are inconsistent with article fourteen of this act." (Article XIV referred to includes section 1401 of the Act of 1929 above referred to.)

Apparently there is a general scheme carried through The Fiscal Code and its amendments, that the liquid fuel tax shall be collected and the lien thereof and its priority determined in accordance with the provisions of the act imposing the liquid fuel tax, and while The Fiscal Code provides (section 1401) for the priority of lien of all taxes, construing this section in comparison with section 1207 of the same act and its amendments, it is clear that it was not intended to make a settlement or account of unpaid liquid fuel tax a preferred claim under the general designation of taxes as provided in section 1401.

As we have said, the Commonwealth has the right to prior and preferential treatment in the collection of accounts due it, if it desires to exercise that right. The Commonwealth has not always exercised this right of priority. For instance, it provided in the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 13 (a), for the priority of the payment of debts of a decedent, in which it provided

that all debts of the decedent, except debts due the Commonwealth, shall be first paid, and that debts due the Commonwealth shall be last paid: Math's Estate, 34 D. & C. 647. Again, in The Fiscal Code of 1929, sec. 1401, it is provided "but the lien of transfer inheritance taxes shall be limited to the property chargeable therewith, and, unless such taxes shall be sued for within five years after they are due, they shall cease to be a lien as against any purchaser of real estate." This provision was carried in the amendment of the Act of 1935. Likewise, in The Fiscal Code of 1929, as amended by the Act of June 3, 1933, P. L. 1474, to section 1401 there was added a provision that "Where the lien of a ground rent, mortgage, or other lien created by or entered against a predecessor in title to such corporation, association, or person is discharged by a judicial sale, the lien of the Commonwealth shall be transferred from the property sold to the fund realized from the sale, and the purchaser shall take free of the lien of the Commonwealth, notwithstanding that the fund may be insufficient to pay all or any part of the same, and, on distribution of the fund, the Commonwealth's lien shall be postponed in payment to said lien or liens created by or entered against such predecessor in title, but shall not be postponed in payment to local taxes or municipal claims."

As the situation stands, if the Commonwealth is entitled to priority for its liquid fuel taxes for which it entered liens long after those entered by exceptants, the proceeds of judicial sales must pay to the Commonwealth the sum of $19,872, in addition to interest and costs, before prior lien creditors can receive any distribution. If the debtor is insolvent by reason of such payments, then the effect is that his creditors are paying his liquid fuel taxes or are being deprived of their security to the extent necessary for the payment of the same. We do not think such a course was ever intended or that legislation should be construed so as to bring about such a condition, unless

the Commonwealth, by appropriate legislation, made claim or exercised its right to priority.

Where no preference or priority is given by constitutional or statutory provision, a tax lien has no preference over other liens: 61 C. J. 925 §1176; Briggs' Appeal, 1 Walker 199; Sweeney v. Arrowsmith, 43 Pa. Superior Ct. 268.

Any priority which the Commonwealth could claim must appear in the Liquid Fuel Tax Acts of 1927 and 1929, since the accounts are settled and the liens filed under these acts. Section 12 of the 1927 act provides that the account "shall be a lien . . . after the same has been entered and indexed of record by the prothonotary of the county where the dealer's or consumer's franchise or property is situate." The Fiscal Code provides that the lien and priority shall be determined by the act imposing the liquid fuel tax. This act designates that time, and under the terms of the act it could not be a lien prior to the entering and indexing, and, no priority being given it, we must come to the conclusion that it is not superior to liens entered at a prior date.

The Act of May 1, 1929, P. L. 1037, imposing a tax on liquid fuels, and under which one of the liens was filed, provides (section 12) that the tax collected shall be a public account "and, as such, shall be a lien . . . after the same has been entered and indexed of record by the prothonotary of the county where the dealer's or consumer's franchises or property are situated." And this provision claims no priority on behalf of the Commonwealth, specifically designates the time when the account shall be a lien, and by inference prevents it from being prior to liens lawfully entered at a previous time. Section 14 of this act, also, in dealing with collection by means of a warrant of distraint, specifically provides that the Commonwealth's claim for liquid fuel taxes shall be paid after all prior liens upon the property, and clearly indicates the intent of the legislature that liens established

at a prior time should not be preceded by the claim of the Commonwealth for liquid fuel taxes.

In our consideration of this question we have not overlooked The Liquid Fuels Tax Act of May 21, 1931, P. L. 149, which imposes an additional tax on liquid fuels and provides that it shall be a lien from the date the taxes are due and shall have priority over any subsequent lien or encumbrance except the lien of other State taxes having priority by law. The taxes imposed and for which the liens were filed were imposed under the Acts of 1927 and 1929 and are not affected by the provisions of the Act of 1931, although it limits its own priority, viz., over subsequent liens and a mortgage only if the statement is filed of record prior to the recording of the mortgage.

Neither have we overlooked the two cases of Young v. Young, 18 D. & C. 353, and Green, Receiver, v. City Garage, 25 D. & C. 431, which cases deal entirely with section 1401 of The Fiscal Code of 1929 and its amendments. In neither case does the court refer to section 1207 of The Fiscal Code which is controlling as to liquid fuel taxes, their collection, and the lien on account thereof.

And now, June 24, 1939, the exceptions filed by The Citizens National Bank of Washington and R. W. Doty, Secretary of Banking of the Commonwealth of Pennsylvania, Receiver of First Bank & Trust Company of Washington, Pa., to the schedule of distribution filed by the sheriff, are sustained, and it is ordered that the schedule of distribution be amended as to the last two items thereof, viz., $36.21 and $73.22 applicable to liens of the Commonwealth of Pennsylvania filed at nos. 146 and 147, February term, 1937, so that no allowance be made on behalf of said liens, but that the aggregate sum of $109.43 be applied pro rata to the various judgments entered by The Citizens National Bank on January 12, 1933, and revived to nos. 214, 215, 216, and 323, February term, 1938, of the Court of Common Pleas of Washington County, Pa., and the judgments entered by W. D. Gordon,

572

Secretary of Banking, Receiver of the First Bank & Trust Company, on January 12, 1933, and revived to no. 319, no. 320, no. 321, and no. 322, February term, 1938, and that the schedule of distribution as so corrected and amended shall, if no exceptions be filed thereto or appeal taken therefrom within a period of 21 days, be finally approved and distribution made in accordance therewith.