Allegheny County Personal Property Tax
Assessment Cases.

Argued March 23, 1944. Before MAXEY, C. J., DREW,
LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

reargument re-
fused June 30, 1944.

*Nathaniel K. Beck,* Assistant County Solicitor, with him *John J. O'Connell,* for appellant.

*Paul G. Rodewald,* with him *David B. Buerger* and *Smith, Buchanan & Ingersoll,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, May 22, 1944:

Is a county personal property tax return false and incomplete, within the meaning of the Act of 1913, P. L. 507, as amended, 72 PS 4844, where all property subject to the tax has been declared but the value placed thereon by the taxpayer is subsequently determined by the Board for the Assessment and Revision of Taxes to have been less than the market value at the time the return was made?

Arthur V. Davis and Roy A. Hunt, appellees, resident taxpayers in Allegheny County, appellant, filed personal property returns for the years 1933 to 1937, inclusive, and the tax thereon was paid. On November 18, 1938, the Board for the Revision of Assessment and Taxes of Allegheny County discovered that the valuation of certain shares of stock was less than the market on the New York Curb Exchange. A reassessment thereof was made and an additional tax imposed against Arthur V. Davis which, with interest, amounted to $57,321.85. On December 12, 1938, a similar reassessment was made with regard to the property of Roy A. Hunt and an additional tax imposed which, with interest, amounted to $16,029.44. Hearings were held by the Board in both cases and the reassessments were sustained. Petitions for appeal to the Court of Common Pleas of Allegheny

County were filed by Davis and Hunt on May 16, 1939, and August 6, 1940, respectively, wherein petitioners complained that in fixing the value of certain shares of stock the Board used prices at which said shares were sold on the New York Curb Exchange, and refused to consider other evidence of value. On December 10, 1941, appellees amended their petitions, alleging that their returns for personal property as filed with the Board were true and complete and the reassessments invalid, for the reason that they were made after the respective years during which the returns were filed. These appeals are from the final orders of the court below sustaining the striking off the reassessments and the levies based thereon.

Section 1 of the County Personal Property Tax Act of 1913, P. L. 507, as amended, 72 PS Section 4821, provides: "All personal property of the classes hereinafter enumerated . . . is hereby made taxable, annually, . . . at the rate of four mills on each dollar of the value thereof . . ." Section 5 of said Act, as amended, 72 PS 4844, provides: ". . . in every case of a false or incomplete return, it shall be the duty of the county commissioners or board of revision of taxes, whenever the facts may become known, to reassess the personal property of any such taxable for any former year or years and to collect the balance of the tax found to be due, together with interest at the rate of six per centum per annum." The language of this act makes clear that unless the returns were either false or incomplete no authority existed whereby the Board could make the reassessment for each of the respective years. In *Schmuck v. Hartman*, 222 Pa. 190, 195, this Court said: "All taxation is statutory . . . Liability to pay taxes arises from no contractual relation between the taxable and the taxing power, and cannot be enforced by common-law proceedings unless a statute so provides. They can be collected in no other way than that pointed out by the statute . . . For these assessments, upon which he paid

taxes each year, the appellants would now substitute reassessments as a basis for the collection by the commonwealth of a large sum of money from the appellee. For this extraordinary proceeding they must point to some statutory authority, for it can exist nowhere else."

The court below properly said, with regard to the "false" or "incomplete" return: "In construing the Statute, one must bear in mind the rule of statutory construction that in the absence of specific definition, the ordinary meaning must be given to the words used. False means untrue; contrary to fact; at variance with the true situation. The County strenuously argues for the contention that false may mean incorrect, and for that definition as relied upon offers one of the alternatives in the definition given by the Oxford Dictionary— 'erroneous in the sense of being incorrect.' This would briefly involve the general contention that the taxpayer, regardless of his good faith in placing a valuation upon his stock which differed from that which the Board ultimately accepted as the valuation to be used for assessment purposes did by that expression of a difference of opinion place himself in a position of having filed a 'false', or as the County contends—'incorrect' return . . . It must be presumed in the absence of the proof to the contrary that the opinion as to valuation expressed by the taxpayer was made in good faith.

" 'Incomplete' means some details left out, not entire, whole or thorough, unfinished, imperfect or defective. It cannot be argued that the return of the taxpayer in this case which was found to have included every stock was incomplete . . . There were no omissions, either as to the kind of stock or the number of shares of any particular issue. The only difference was the difference of opinion as to the valuation to be placed upon these shares."

Orders of the court below are affirmed. Costs to be paid by appellant.