## Lit Brothers v. City of Philadelphia

*Lemuel B. Schofield,* for plaintiff.

*Joseph H. Lieberman,* for board of revision of taxes.

SMITH, P. J., March 31, 1948.—This matter is now before the court on a reargument on the exceptions filed to an adjudication of the court.

It grows out of an appeal by a taxpayer to an assessment by the board of revision of taxes for the year of 1947 on premises 1327-39 Chestnut Street, Philadelphia. The said assessment as fixed for the year of 1947 was in the sum of $4,820,700. The chancellor in his adjudication, after having taken testimony on the appeal, sustained the appeal and fixed the fair market value of the said property for the year of 1947 in the sum of $4,719,589, allocating $3,134,250 to the land and $1,585,339 to the building, representing a total reduction in the assessment of $101,111. Plaintiff filed exceptions to the findings of fact and conclusions of law of the chancellor, and the failure of the said chancellor to conclude as a matter of law that the fair market value of the said property in 1947 was not greater in amount than $3,250,000. These exceptions to the said adjudication were dismissed in a per curiam opinion by this court en banc and an order was entered by Alessandroni, J., on December 26, 1947, and stating "that the assessment for premises situate 1327-

1339 Chestnut Street for the year of 1947 is fixed at $4,719,589".

Plaintiff then asked for a reargument and in a petition therefor stated that for the fall of the years 1945 and 1946 other courts of common pleas of this county had on appeal fixed the fair market value of this property at $4,050,000 and that this court for the year 1947 adjudicated a fair market value for said premises in an amount $669,589 higher than the judicially established assessment fixed by a court of competent jurisdiction for the year 1946. Plaintiff contends that since the real estate expert for the city has not shown any increase in the value of the said premises between the fall of 1945 and the fall of 1946, and that he valued the said premises as of the fall of 1946 at precisely the same figure as he attributed to it when he testified in connection with the 1946 appeal in the Court of Common Pleas No. 1, and in the appeal in the Court of Common Pleas No. 7 in connection with the 1945 appeal, that this court is without power or authority to adjudicate the assessment for the year of 1947 at an amount higher than the assessment for 1946 as adjudicated by the Court of Common Pleas No. 1.

This question involves two novel problems:

1. May a board of revision of taxes reinstate for the following year the assessment fixed by it before an appeal, after a court of common pleas has adjudicated a market value of the property at a sum less in amount than that fixed by said board of revision of taxes?

2. May a court of common pleas after another court of competent jurisdiction has fixed the fair market value of a property for a prior year, and there is no evidence showing an increase in the value of the property after that court has fixed the said market value for the said prior year, make a new assessment for a succeeding year for the said property greater in amount than that fixed by the other court for the year before?

Question No. 1 is controlled by statute. It is an administrative duty. Each separate year the board of revision of taxes must fix the assessment of all real estate within its jurisdiction. The Act of June 27, 1939, P. L. 1199, 53 PS §§4805.7, 4805.8, provides:

"4805.7. The board shall issue annually, at such time as the board shall determine, its precepts to the real estate assessors assigned to the various real estate assessment districts, and the assessors shall, upon the receipt of such precepts, assess and value each parcel of real property located within the districts to which they are assigned, and shall return such assessments to the board upon such date as the board shall provide. Such return shall be in such form as the board shall prescribe, but shall require the assessors to assess separately the land and the improvements thereon in the case of each parcel of real property. The assessors shall also ascertain, and shall note in their returns, any division of any parcel, any change in the physical condition of the land or of the improvements located thereon, including the destruction or demolition or improvements and the erection of new improvements, and any change in ownership thereof, occurring after the last preceding return was filed for such parcel, and such changes shall be noted on the records to be maintained by the board as provided in section six of this act.

"4805.8. Upon the date fixed for receiving the returns of the assessors, the board shall proceed to examine the returns and inquire whether the same have been made in conformity with the laws of this Commonwealth, and whether all property has been valued as provided in this act, and may revise, alter and amend the valuations by raising or lowering the valuations either in individual cases or by districts, shall rectify all errors and make valuations where they have been omitted. The board shall complete its revision of the assessments on or before the third Monday of Sep-

tember of each year. The assessments made by the assessors, as revised and supplemented by the board, subject to appeal therefrom as hereinafter in this act provided, shall constitute the assessed value for tax purposes of real property located in the county for the next ensuing calendar year."

The said board of revision of taxes followed this procedure and for each year of 1945, 1946 and 1947 assessed the said property in substantially the same amount. In the year of 1947 the assessment was fixed in the sum of $4,820,700. The said Act of 1939 (53 PS §4805.15) provides:

"Any person aggrieved by the disposition made by the board of any appeal, may file a petition for review of the assessment in the Court of Common Pleas of the County, and may appeal from the decision thereon by the Court of the Common Pleas to the Supreme or Superior Courts, as is now provided by law."

This the appellant was not precluded from doing.

While this court has due deference for the decisions of other courts of equal jurisdiction in this county, we do not believe that this is res adjudicata. If each annual assessment is separate and apart from those of prior years, we believe that on an appeal from the assessment fixed by the board of revision that we are obligated de novo to make a study of all the facts of the case, the location of the property, the character of the structure, the location of the land in connection with other land adjacent to it, and the effect of an assessment of the property as it might affect or be affected by the value of other properties in the same immediate neighborhood. As long as they are uniform we see no reason for upsetting the assessments. Our learned brothers of Common Pleas No. 7 and Common Pleas No. 1 found that the fair market value of this property for the years 1945 and 1946 respectively was in the amount of $4,050,000 without indicating any breakdown showing how they arrived at this value.

This court in its adjudication shows that this is an 18-story building consisting of 558,077 square feet with a cubical content of 7,927,697 cubic feet, erected on a parcel of land of a width on Chestnut Street of 150 feet, with a depth back to South Penn Square and located in the heart of the main commercial and financial area of Philadelphia. The chancellor personally examined the said building and found, as was testified to by witnesses, fair market value of the land is in the sum of $3,134,-250, and that of the building in the sum of $1,585,339, making the aggregate fair market value in the fall of 1947 to be in the sum of $4,820,700. The finding of the chancellor that this building is in good condition is a matter relevant to the issue in consideration of its value. With a footage of 558,077 square feet at a value of $1,585,339, it requires little mathematical calculation to find that the unit value per square foot is about $2.84, or at about 20c a cubic foot. This seems to us to be a minimum valuation for a structure of this kind and character in its location in the most valuable section of Philadelphia.

If the contention of appellant be adopted it would render meaningless the provisions of the Act of 1939, supra, giving the right to make assessments annually and the right to take an appeal annually. In Smuck v. Hartman, 222 Pa. 190 (1908) it was held:

"The mode pointed out in the Act for fixing liability for taxes must be pursued each year, for in each year the tax must be assessed and paid; that taxation is purely statutory and for the legislature; and that the judiciary can enforce it only as the legislature directs it to be enforced."

There is nothing in the said act of assembly to the effect that if a common pleas court once acts upon an appeal and fixes a value for one year, that another court of equal jurisdiction may not reconsider the valuation for a following year. While it may be argued that it may lead to some confusion if courts disagree as

to the value of the same parcel of real estate, and that the factual position of a taxpayer may be made difficult, it seems to be of more importance that the taxing authority in fixing uniform assessments for the same neighborhood should be maintained and supported if the facts supporting the assessment for the year before the court can be found justified by the chancellor hearing the appeal de novo.

In People ex rel. Berkey et al. v. Foley et al., 277 N. Y. Supp. 646, the court held: "A determination by three assessors in 1933 did not conclude one of their number in 1934." In City of Lowell v. Commissioners of Middlesex County et al., 25 N. E. 469, 472 (Mass.), it was held:

"If assessors or county commissioners who have estimated the value of property for the purpose of assessment in one year, are of opinion the next year that, although the value has not changed, the value of the preceeding year was too low or too high, they are bound by statute to estimate the value for the next year, 'according to their best skill and judgment' at the time they make the valuation. It may well be doubted whether in actions at law, the doctrine of res adjudicata includes the assessment of damages when applied to subsequent proceedings between the same parties on another cause of action."

Where the duty to make an annual assessment is imposed by statute upon a board of revision of taxes, it cannot escape that duty by relying upon the disposition made by a court of common pleas for the prior year. Each year constitutes a new duty and requires a new and separate assessment by the said board. Each appeal from an assessment of the board constitutes a new and separate cause of action. That being so, the doctrine of res adjudicata cannot apply. The judgment of a common pleas court is only binding upon a cause of action which is within its jurisdiction and is not a bar upon a subsequent new and separate cause of

action. "The doctrine of res adjudicata is applicable only to a final determination between the parties, by a competent tribunal and upon their merits": Foster v. Bumstead, 100 Mass. 409. In Weigley v. Coffman, 144 Pa. 489, 498, it was held: "It is only where the point in issue has been determined that a judgment is a bar".

### Order

And now, to wit, March 31, 1948, the said order of the court of December 26, 1947, is affirmed; plaintiff's exceptions to the adjudication are dismissed and the assessment for premises situate 1327-39 Chestnut Street, Philadelphia, for the year 1947 is fixed at $4,719,589.